IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-_____

ALON BARAK, individually, and
KR8TIV GROUP, a Delaware Company,

  Plaintiffs,

v.

**ROOSTER'S GUIDE & OUTFITTING ADVENTURES, A/K/A
ROCKY MOUNTAIN NATURAL ORGANICS,**
A COLORADO COMPANY, and, **ROD COGBURN**, individually,
**AVA COGBURN**, individually, **RAY ALLEN COGBURN**,
individually, **SHEREE COGBURN WALCHER**, individually,
and, **BEN WALCHER**, individually,

  Defendants.
_____/
_____

## VERIFIED COMPLAINT FOR DAMAGES
_____

Plaintiffs, **ALON BARAK**, individually, (herein after referred to from time to time as "Barak");

and,  **KR8TIV GROUP, LLC**, a Delaware Limited Liability Company, (herein after referred to

from time to time as "KR Group"), and,  HEREBY sues and submits this Complaint against the

**Defendants, ROD COGBURN**, individually, **AVA COGBURN**, individually, **RAY ALLEN**

**COGBURN**, individually, **SHEREE COGBURN WALCHER**, individually, and, **BEN**

**WALCHER**, individually, and, **ROOSTER'S GUIDE & OUTFITTING ADVENTURES,**

**LLC., A/K/A ROCKY MOUNTAIN NATURAL ORGANICS** (herein after at times referred to

as "Roosters"), as follows:

**PARTIES**

1.      Plaintiff, ALON BARAK ("BARAK"), is a citizen of the State of California, and along with his family permanently resides and works in and from Beverly Hills, California 90212.

2.      Plaintiff, KR8TIV GROUP, LLC, is a Delaware Company, (herein after referred to from time to time as "KR Group"), whose address and principal place of business is located at 4034 Willow Grove Road, Camden, Delaware 19934.  At all times material hereto KR Group is a single member LLC whose single member is the Plaintiff Barak.

3.      At all times material hereto, Barak & KR Group shall collectively be referred to as "Plaintiffs" and are individually and collectively sui juris.

4.      At all times material hereto, Barak and KR Group are Parties to Exhibits' "A" & "B", attached hereto and incorporated herein.

5.      On information and belief, Defendant, ROOSTER'S GUIDE & OUTFITTING ADVENTURES, A/K/A ROCKY MOUNTAIN NATURAL ORGANICS ("Roosters"), is a Colorado Limited Liability Company located in Mesa County, Colorado and is sui juris.

6.      At all times material hereto, Defendant, ROD COGBURN, individually, is a permanent resident of Mesa County, Colorado.  Defendant Rod Cogburn is believed to be an owner and/or operator of Defendant Roosters and tortuously acted in such capacity as well as in his individual capacity.  Defendant Rod Cogburn is sui juris.

7.      At all times material hereto, Defendant, AVA COGBURN, individually, is a permanent resident of Mesa County, Colorado.  Defendant Ava Cogburn is believed to be an owner and/or operator of Defendant Roosters and tortuously acted in such capacity as well as in her individual capacity.  Defendant Ava Cogburn is sui juris.

2

8.      At all times material hereto, Defendant, RAY ALLEN COGBURN, individually, is a permanent resident of Mesa County, Colorado. Defendant Ray Allen Cogburn is believed to be an owner and/or operator of Defendant Roosters and tortuously acted in such capacity as well as in his individual capacity. Defendant Ray Allen Cogburn is sui juris.

9.      At all times material hereto, Defendant, SHEREE COGBURN WALLCHER, individually, is a permanent resident of Mesa County, Colorado. Defendant Sheree Cogburn Wallcher is believed to be an owner and/or operator of Defendant Roosters and tortuously acted in such capacity as well as in her individual capacity. Defendant Sheree Cogburn Wallcher is the wife of Defendant Ben Wallcher and is sui juris.

10.     At all times material hereto, Defendant, BEN WALLCHER, individually, is a permanent resident of Mesa County, Colorado and the husband of Defendant Sheree Cogburn Wallcher. Defendant Ben Wallcher is believed to be an operator and officer of Defendant Roosters and tortuously acted in such capacity as well as in his individual capacity. Defendant Ben Wallcher is sui juris.

11.     Defendants, *supra*, shall collectively be referred to as "Defendants".

12.     At all times material hereto, the Defendants acted in their individual, collective and/or corporate capacities as it relates to the torts and breaches against the Defendants.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331, because the federal claim herein arises out of violations of the Securities Act of 1933 for which the Plaintiffs seek relief pursuant to 15 U.S.C. § 77l and 15 U.S.C. § 77o.

14.     Further, this Court has supplemental subject matter jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to the claims arising under the Securities Act of 1933 as to form part of the same case or controversy under Article III of the U.S. Constitution.

15.     Further this Court has jurisdiction pursuant to 28 U.S.C. § 1332 over the subject matter presented in this Complaint because the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and, as set forth below, diversity of citizenship exists as authorized by 28 U.S.C. § 1332(a) and 28 U.S.C. § 1332(c).

16.     The Defendants have transacted business in Colorado and engaged in a substantial part of the tortious actions and events, complained of herein, giving rise to this action in Mesa County, Colorado, including the intentional, knowing, deliberately reckless, and/or negligent material misrepresentations, breach of contract, omissions, theft and/or embezzlement, conspiracy to defraud, and wrongful enterprise made to and against the Plaintiffs and solicitation of Plaintiffs' investments totaling more than Six Hundred Ninety Four Thousand - Two Hundred and Sixty Nine Dollars and nine cents $694,269.09, not including loss of profits, compensatory, actual and/or punitive or treble damages.

17.     Venue is proper in this Court pursuant to 15 U.S.C. § 77l and 28 U.S.C. § 1391, as substantial part of the actions and events giving rise to this action in Mesa County, Colorado, including the intentional, knowing, deliberately reckless, and/or negligent material misrepresentations, breach of contract, omissions, theft and/or embezzlement, conspiracy to defraud, and wrongful enterprise made to and against the Plaintiffs and solicitation of Plaintiffs' investments totaling more than Six Hundred Ninety Four Thousand - Two Hundred and Nine

Dollars and nine cents ($694,269.09), not including loss of profits, compensatory, actual and/or punitive or treble damages.

18.     Venue of this action lies in Grand Junction, Colorado, as the Res in issue and the acts of wrongdoing took place principally in Mesa County, Colorado.

19.     This Complaint is not a collusive action to confer jurisdiction that the Court would otherwise lack.

20.     This action is further being brought as a result of the intentional, knowing, deliberately reckless, and/or negligent material misrepresentations, omissions, and other misconduct by the Defendants, performed in connection with the solicitation and sale of securities related to the Joint Venture which was created in principle from July through October of 2019 in addition to the signed and sealed July 15, 2019 Joint Venture Agreement (herein after referred to from time to time as Joint Venture, Agreement, or, Exhibit "A"), as well as the Parties modified and editing Exhibit "A", and re-signing a September 24, 2019 Agreement, (herein after referred to from time to time as Joint Venture, Agreement, or, Exhibit "B"),which resulted in Plaintiffs being defrauded out of approximately Seven Hundred Thousand - Two Hundred and Sixty Nine Dollars+, plus their share of the products (hemp biomass, flower, and/or derivatives) and profit that would have resulted from sale of the hemp biomass and return and reimbursement on Plaintiffs money.

21.     The Defendants' **RODNEY COGBURN**, individually, and **AVA COGBURN**, individually, outside of their corporate capacities with the Defendant entity Rooster's Guide & Outfitting Adventures, LLC a/k/a Rocky Mountain Natural Organics, devised and implemented a scheme that defrauded the Plaintiffs, in furtherance of the Defendants collective plan to unlawfully enrich themselves at the expense of the Plaintiffs.

## GENERAL ALLEGATIONS

22.     At all times material hereto, the Plaintiff Barak, was introduced to Ava and Rodney Cogburn, approximately June 2019, vis-à-vis an acquaintance as a result of the Cogburn's need to raise investment capital to enter the Colorado State Hemp Program and cultivate and harvest Industrial Hemp.

23.     As a direct result of numerous telephone call meetings by and between the Parties (internationally and where the Plaintiff resides in the State of California), and the Plaintiff Barak's visits to the Cogburn farm in July/August 2019, the Plaintiff was convincingly talked into investing into the Defendants' hemp dream by said Defendants as well as shown the alleged profits received by the Defendants the prior year with less than 1/3rd of the same crop.

24.     At all times material hereto, Ava Cogburn and her husband Rodney Cogburn took a lead role in convincing the Plaintiffs that their family farm would harvest the Parties "a golden return on investment".

25.     At all times material hereto, the Defendants, collectively, assured and provided comfort to the Plaintiffs by showing off their family farm, by convincing the Plaintiffs of the farm's security, alleged perfect growing conditions, the Cogburn family unit as the brute labor and farming experience force and the safety of the Plaintiff's investment and the profitability thereof. In fact, Ava and Rodney Cogburn assured and personally guaranteed, orally, that the Plaintiff would be making a large "windfall" on his investment and that the Parties would enjoy a long and prosperous partnership.

26.     At all times material hereto, the Defendants, collectively, did such a good "sales or con-job" on the Plaintiffs that the Plaintiff Barak purchased hemp plants from a Colorado based genetic hemp plant source even prior to entering into Exhibit "A".  In fact, the Defendants, particularly Ava Cogburn and Rodney Cogburn did such a great job of selling the Plaintiff on how great of a business, how great of an industry this hemp business was, and that the Plaintiff was going to make millions and millions of dollars in return for his investment, that the Plaintiff began making payments towards the business and the Cogburn's needs beginning early July 2019.

27.     At all times material hereto, the Cogburn family ("all Defendants") were already late in the growing season, however, falsely convinced the Plaintiff that with the Plaintiff's immediate capital infusion, they could grow and cultivate, efficiently from the purchase of large plants as opposed from seed or small clones had the parties gotten a head start on the growing season.

28.     At all times material hereto, the Parties agreed on certain protocols and procedures in return for the Plaintiff's capital.  These agreed upon procedures were to ensure the safety of the Plaintiffs investment as well as to intentionally bring knowing comfort to Barak given the size of his investment.

29.     At all times material hereto, the Parties agreed on a Harvesting period so that the Plaintiff and his representatives could be present.  This period was slated for the end of October 2019.

30.     At all times material hereto, the Defendants harvested prior to the agreed upon harvesting period, did not inform the Plaintiffs that the crop was being harvested, and afterwards broke off much of the communications between the Parties.

31.     At all times material hereto, the Defendants refused to inform the Plaintiff and his representative(s), after the harvest, as to the details or whereabouts of the harvested biomass and refused to allow the Plaintiff back onto the property or the location of the stored biomass.

32.     To date, the Defendants have failed or refused to provide the Plaintiff with any accounting, with any reimbursement of costs and expenses, with any return on his investment and with the promised "riches" he would be receiving.

33.     In fact, to date, the Defendants simply took all of the Plaintiffs investment and the Plaintiffs 50% of the profits as provided for within Exhibit "B", attached hereto and incorporated herein.

34.     At all times material hereto, the Defendants have refused to provide any details of the business joint venture and have been intentionally hiding the same from the Plaintiff Barak.

35.     At all times material hereto, the Plaintiffs sent the Defendants a Demand Letter, dated November 23, 2019, by email and mail, which went un-responded.  (See, a copy of said Demand Letter as Exhibit "C", attached hereto).

36.     At all times material hereto, on November 30, 2019, the Plaintiffs sent by email and mail, a Notice of Preservation of Evidence Letter, which also went un-responded to. (See, a copy of said Letter, attached hereto and incorporated herein as Exhibit "D").

37.     All conditions precedent to the filing of this lawsuit have been complied with.

38.     At all times material hereto, the Defendants, with Ava and Rodney Cogburn taking a lead role, induced and falsely represented material facts so that the Plaintiffs would inject their capital into the joint venture for which the Defendants expressly promised the Plaintiffs 50% thereof.  (See, Exhibit "B").  Alarming is the fact that the Defendants Ava and Rodney Cogburn made such false and misleading promises and assurances, knowing that the Plaintiff Barak was

going to rely upon these false statements to not only his own detriment, but to the detriment of his day to day business, the well-being of his family and their financial needs, as well as to the lender who loaned Barak monies based upon the assurances of grandeur or riches promised by the Defendants Ava and Rodney Cogburn.

39.     At all times material hereto, the knowing falsities and misrepresentations spun by Ava and Rodney Cogburn were done maliciously and with the intent to gain them monies belonging to or from the Plaintiff Barak with complete disregard as to the harm to be caused to the Plaintiffs.

40.     Each of the Plaintiffs and the Defendants are a "person" as defined in 28 U.S.C. § 77b(a)(2).

41.     At all times material hereto Rodney and Ava Cogburn not only have joint control and dominion over the Defendant Rooster's Guide & Outfitting Adventures, LLC, A/K/A Rocky Mountain National Organics, but utilize the business entity as an alter ego of themselves and their own private enterprise, personal extension of themselves and for the bank account which they commingled with their personal and farm expenses.

42.     At all times material hereto, Rodney and Ava Cogburn utilize the Defendant Rooster's Guide & Outfitting Adventures, LLC, A/K/A Rocky Mountain National Organics as a personal enterprise for their own personal gain.

43.     At all times material hereto, the Defendants had control over the presentation and execution of Exhibit "A" and Exhibit "B", and personally presented both Exhibits to Plaintiffs in writing in Garthfield County, Colorado, within their own home.

44.     Defendants knew that these Exhibits "A"/"B" contained intentional, knowing, deliberately reckless, and/or negligent material misrepresentations and/or omissions in order to

induce the Plaintiff Barak to invest in the creation, formation and interests of a Joint Venture signed and entered into within the personal home of Ava and Rodney Cogburn, recorded within Garfield County records (see Exhibit "B"), as well as the following knowingly false and misleading representations to the Plaintiff in order to take the Plaintiffs monies:

    a. The Cogburn family has been in the farming business for generations on the same farm;

    b. The Cogburn family works as a singular family unit and shall supply all of the needed labor and expertise;

    c. Cultivating industrial hemp beginning in August 2019, is just as efficient and cost beneficial as if the Parties started May or June 2019, because the Parties can merely purchase, with the Plaintiffs investment, large hemp plants or cultivars as opposed to starting with less expensive seeds and the expenses of raising the seeds to large plants. Basically, the Defendants knowingly and intentionally, falsely convenienced the Plaintiffs that it was "a wash" between purchasing large hemp plants against the alleged costs or raising industrial hemp from seedlings;

    d. That the Parties would be 50%-50% partners, indefinitely as to both Hemp and Cannabis;

    e. That the first monies out will reimburse the Plaintiff for his costs and the profits would come after all of the monies spent or expended by the Plaintiff as costs/expenses were reimbursed;

    f. That all parties will jointly have say so, decision making knowledge and authority and full disclosures would be always demonstrated and maintained;

g.  That the Plaintiff will be able to treat and act as if the Cogburn farm was also his. That the Parties are now all family, all working as "brothers" and "sisters" and do things on their word and a country hand-shake;

h.  That the monies coming from the Plaintiff for the benefit of the Cogburn farm property's improvements will also be counted as costs and taken off the top from the hemp harvested and sold;

i.  That the Cogburns are true to their word, honest, hard-working farmers and as such do not need contracts or agreements to tell them what the right is, moral obligations they have to abide by;

j.  That the Cogburn family would never "screw over" the Plaintiff and deeply appreciates how deep the Plaintiff and his family have had to reach and what he and his family have had to endure to come up with the size of the investment made;

k.  That the Plaintiff would have his costs reimbursed by the end of October 2019;

l.  That the Defendants already have the entirety of the harvest pre-sold;

m.  That the Plaintiff would begin seeing the return on his investment late October/beginning November and would probably be paid off in full by mid-December 2019;

n.  That this is a trustful community with people such as the Cogburns as trusted soles.

45.  In material reliance on Defendants' intentional, knowing, deliberately reckless, and/or negligent material misrepresentations, omissions, and other misconduct, the Plaintiffs made the following money transfers totaling at least Six Hundred Ninety Four Thousand Dollars and

nine cents $694,269.09, for the purchase of the 50%/50% equity interest in the newly formed Joint

Venture:

    a.  $9,040        October 25, 2019        Bank of America Check

    b.  $37,000       July 25, 2019          BOA Wire

    c.  $2,410.92     August 1, 2019        BOA Check Card Debit

    d.  $2,000        August 14, 2019      BOA Check Card Debit

    e.  $30,000       August 1, 2019        BOA Wire

    f.  $2,500        August 12, 2019      BOA Zelle Transfer

    g.  $1,300        August 13, 2019      BOA Zelle Transfer

    h.  $600          August 16, 2019      BOA Zelle Transfer

    i.  $6,000        August 29, 2019      Merrill Lynch Wire

    j.  $2,500        September 24, 2019    Merrill Lynch Zelle

    k.  $2,500        October 4, 2019       Merrill Lynch Zelle

    l.  $2,200        October 10, 2019     Merrill Lynch Zelle

    m. $490         October 10, 2019     Merrill Lynch Zelle

    n.  $10,000      October 10, 2019     BOA Wire

    o.  $1,000        October 15, 2019     BOA Zelle Transfer

    p.  $2,000        October 15, 2019     BOA Zelle Transfer

    q.  $15,000      October 16, 2019     BOA Wire

    r.  $500         October 21, 2019     BOA Zelle Transfer

    s.  $1,200        October 28, 2019     BOA Zelle Transfer

    t.  $178.78      October 21, 2019     BOA Check Card

    u.  $133.52      October 21, 2019     BOA Check Card

v.  $500              October 25, 2019        Wells Fargo Transfer

w.  $1,925.15         August 12, 2019         Wells Fargo Credit Card

x.  $41.56            September 3, 2019       East West Bank Credit Card

y.  $5,000            September 6, 2019       East West Bank Wire

z.  $20,000           September 17, 2019      East West Bank Wire

aa. $736              September 24, 2019      East West Bank Credit Card

bb. $17.75            September 25, 2019      East West Bank Credit Card

cc. $25.24            September 25, 2019      East West Bank Credit Card

dd. $57.86            September 25, 2019      East West Bank Credit Card

ee. $17.90            September 26, 2019      East West Bank Credit Card

ff. $50.55            September 26, 2019      East West Bank Credit Card

gg. $5.00             September 26, 2019      East West Bank Credit Card

hh. $487.40           August 8, 2019          East West Bank Credit Card

ii. $2,000            August 12, 2019         East West Bank Credit Card

jj. $2,000            August 14, 2019         East West Bank Credit Card

kk. $218.22           August 16, 2019         East West Bank Credit Card

ll. $2,000            August 21, 2019         East West Bank Credit Card

mm. $5,000            August 22, 2019         East West Bank Credit Card

nn. $2,345            August 28, 2019         East West Bank Wire

oo. $1,900            August 29, 2019         East West Bank Wire

pp. $2,000            August 29, 2019         East West Bank Credit Card

qq. $400.24           August 30, 2019         East West Bank Credit Card

rr. $87,500           July 18, 2019           East West Bank Wire

| ss. $5,000 | July 23, 2019 | East West Bank Wire |
|---|---|---|
| tt. $10,000 | July 23, 2019 | East West Bank Wire |
| uu. $688 | July 25, 2019 | East West Bank Credit Card |
| vv. $31,000 | August 6, 2019 | East West Bank Wire |
| ww. $20,000 | August 12, 2019 | East West Bank Wire |
| xx. $6,000 | August 14, 2019 | East West Bank Wire |
| yy. $4,800 | August 21, 2019 | East West Bank Wire |
| zz. $10,000 | August 21, 2019 | East West Bank Wire |
| aaa. $8,000 | August 22, 2019 | East West Bank Wire |
| bbb. $10,000 | September 6, 2019 | East West Bank Wire |
| ccc. $54,000 | July - October, 2019 | Office Rent/Expenses |
| ddd. $72,000 | July - Oct. 2019 | Personal Loans from Bruno Derval |

eee. Approximately $100,000+ Cash Payments to Vendors/Partners

**$694,269.09+**

## CLAIMS

### FIRST CLAIM FOR RELIEF
### ACCOUNTING

46. Plaintiffs reaffirm and reallege the allegations set forth above, including paragraphs 1 - 45.

47. At all times material hereto the Defendants, collectively, formed a joint venture with this joint venture being ratified by Defendant Roosters and Plaintiffs in Exhibits "A" & "B", in writing.

48. At all times material hereto, the Plaintiffs made a significant investment into the joint venture as well as into the Defendants Ava and Rodney Cogburn's property as set forth herein above.

49. At all times material hereto the Defendants have failed or refused to provide Plaintiffs with an accounting of their investment monies, an accounting as to the product (industrial hemp) which was cultivated and harvested and stored, an accounting as to the product (industrial hemp) which was cultivated and harvested and sold, and, an accounting of all sums of monies (gross) generated as a result of the Plaintiffs investment whether in cash and check and wire and transfer and value.

50. At all times material hereto the Plaintiffs have demanded an accounting and the Defendants have failed or refused to provide one.

WHEREFORE, the Plaintiffs pray this Honorable Court grant the Plaintiffs an accounting as well as any and all other relief deemed just and proper, including a reasonable award of attorney fees and costs, and a lien on the subject property, as well as an Order preventing the Defendants from obtaining a renewed Hemp License through the Colorado Department of Agriculture.

## SECOND CLAIM FOR RELIEF
### (Violation of Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C § 77l)
### (Direct Claim Against All Defendants)

51. Plaintiffs incorporate the preceding paragraphs 1 - 45, as if fully set forth herein.

52. Each of the Defendants are "Sellers", "Offerors" and/or "Solicitors of securities, in connection with such offerings, as contemplated by the Securities Act of 1933.

53. Exhibit "A" and Exhibit "B" attached hereto constitutes an offering document and was inaccurate and misleading, contained untrue statements of material facts, omitted to state other

facts necessary to make the statements made not misleading and omitted to state material facts required to be stated therein.

54.     The Defendants' oral inaccurate and misleading, untrue statements of material facts, omission to state other facts necessary to make the statements made not misleading, and omission to state material facts required to be stated include those set forth in paragraph 39, above.

55.     Plaintiffs purchased, entered into, advanced, or otherwise acquired interests offered, solicited, or offered pursuant to oral and written intentional, knowing, deliberately reckless, and/or negligent material misrepresentations, omissions, and other misconduct by the Defendants, performed in connection with the solicitation and sale of the Joint Venture and Oral Securities Agreement entered into.

56.     By reasons of the conduct herein alleged, Defendants have violated and/or controlled a person who violated Section 12 of the Securities Act of 1933.

57.     Plaintiffs hereby elect to rescind and tender, to those Defendants, Rooster's Guide & Outfitting Adventures, LLC, Ava Cogburn and Rodney Cogburn, named in this claim, those securities interests (50%) own in return for the consideration paid for those securities with interest thereon.

58.     At the time Plaintiffs purchased, entered into, obtained the legal interests in the Parties business, each of them was without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to making the payments to obtain this securities interests.

59.     Less than one (1) year has elapsed from the time Plaintiffs discovered the facts upon which this claim is based to the date of filing of this claim.

### THIRD CLAIM FOR RELIEF
### (Violation of Section 15 of the Securities Act of 1933, 15 U.S.C § 77o)
### (Direct Claim against Ava & Rodney Cogburn)

60.     Plaintiffs incorporate the preceding paragraphs 1 - 45, as if fully set forth herein.

61.     Defendants Ava Cogburn and Rodney Cogburn were controlling persons of the Parties business interests, including the expressed Joint Venture, by virtue of their position and role as set forth herein paragraphs 1-45.

62.     Defendants Ava Cogburn and Rodney Cogburn are culpable participants in the violation of the Securities Act of 1933 alleged in the Second Claim for Relief above.

63.     As a result, Defendants Ava Cogburn and Rodney Cogburn, are "controlling persons", within the Act and as such are personally and individually liable for the wrongful conduct and damages sustained by Plaintiffs as a result.

### FOURTH CLAIM FOR RELIEF
### (Securities Fraud – Colorado Securities Act)
### (Direct Claim Against All Defendants)

64.     Plaintiffs incorporate the preceding paragraphs 1 - 45, as if fully set forth herein.

65.     Defendants are jointly and severally liable to Plaintiffs pursuant C.R.S. § 11-51-604(3) and (4), for soliciting and selling securities to Plaintiffs in violation of C.R.S. § 11-51-501(1)(a), (b), and (c).

66.     In connection with the offer, sale and/or purchase of securities, Defendants directly and indirectly: (1) employed devices, schemes and/or artifices to defraud; (2) made untrue statements of material fact and/or omitted to state material facts necessary in order to make their statements, in light of the circumstances under which they were made, not misleading; and/or (3) engaged in acts, practices, or courses of business which operated as a fraud or deceit upon the Plaintiffs.

67.     In making the false and misleading statements and omissions to Plaintiffs, including those set forth in paragraphs 25, 26, 27, 28, & 44, above, Defendants acted with intent to defraud or with reckless disregard for Plaintiffs' interests. At the time Plaintiffs obtained said securities interests, Plaintiffs did not know, and in the exercise of reasonable care could not have known, that the representations made to Plaintiffs were materially false and misleading; and did not know the true facts which are alleged in this Complaint to have been omitted.

68.     Plaintiffs have suffered damages in the amount of at least Six Hundred Ninety Four Thousand Dollars and nine cents $694,269.09, as a result of their reliance on the Defendants' false and misleading statements and omissions.  Those false and misleading statements and omissions induced Plaintiffs to make the investments which they would not have otherwise made, in whole or in part, because the misrepresentations and omissions materially altered and/or concealed the true risks of investing in the Defendants business and executed Joint Venture (Exhibits "A" & "B").

69.     Defendants are liable to Plaintiffs for such legal and equitable relief that the Court deems appropriate, including rescission, actual damages, interest at the statutory rate, costs and reasonable attorneys' fees, as provided under C.R.S. § 11-51-604(3).

70.     Plaintiffs stand ready to tender their securities.

71.     Plaintiffs are entitled to recover from the Defendants, jointly and severally, the consideration of at least Six Hundred Ninety Four Thousand Dollars and nine cents $694,269.09, they paid for the securities and/or interests, together with interest at the statutory rate, and costs and attorney's fees, as provided in C.R.S. § 11-51-604(4).


### FIFTHTH CLAIM FOR RELIEF
**(Controlling Person Liability – Colorado Securities Act)**

**(Direct Claim Against Defendants Ava Cogburn and Rodney Cogburn
And Defendant Roosters)**

72.     Plaintiffs incorporate the preceding herein above, including paragraphs 1 - 45, as if fully set forth herein.

73.     Defendants Ava Cogburn and Rodney Cogburn engaged in the primary violations of the Colorado Securities Act along with the Defendant Roosters.

74.     Defendants Ava Cogburn and Rodney Cogburn, by virtue of their position, and/or undertaking the specific acts described above, (paragraphs 1 - 45), were, at the time of the wrongs alleged herein, a controlling person of within the meaning of C.R.S. § 11-51-604(5).

75.     By reason of the conduct alleged herein, Defendants Ava Cogburn and Rodney Cogburn, the Controlling Defendants are liable, jointly and severally, and to the same extent as Full Spectrum Nutrition, LLC, a Florida limited liability company, and Roosters, a Colorado limited liability corporation, for the wrongful conduct, and is liable to Plaintiffs for the damages Plaintiffs suffered in connection with its purchase of the securities.

76.     Plaintiffs stand ready to tender their securities.

77.     Plaintiffs are entitled to recover from the above listed Defendants, jointly and severally, the consideration of at least Six Hundred Ninety Four Thousand Dollars and nine cents $694,269.09,  they paid for the securities, together with interest at the statutory rate, and costs and attorney's fees, as provided in C.R.S. § 11-51-604(4).

**FOURTH CLAIM FOR RELIEF**
**(Common Law Fraud Against All Defendants)**

78.     Plaintiffs incorporate the preceding paragraphs above, specifically paragraphs 1 - 45, as if fully set forth herein.

79.     Defendants made or caused to be made false representations of material facts and/or failed to disclose material facts to Plaintiffs, as set out with particularity in the foregoing paragraphs, including paragraphs 25, 26, 27, 28, & 44.

80.     At the time of the representations and/or omissions, Defendants knew that the representations were false or were aware that Plaintiffs did not know whether the representations were true or false.

81.     Defendants made the representations with the intent that Plaintiffs would rely on the representations and/or omissions, and in fact Plaintiffs did rely on the representations and/or omissions in investing in the Defendants business and the said joint venture.

82.     Plaintiffs reliance was reasonable and justified.

83.     Plaintiffs reliance upon Defendants' false statements and omissions of material facts caused Plaintiffs damages.

84.      Plaintiffs have suffered damages in the amount of at least Six Hundred Ninety-Four Thousand Dollars and nine cents $694,269.09, as a result of their reliance on the Defendants' false and misleading statements and omissions.  Those false and misleading statements and omissions induced Plaintiffs to make the investments which they would not have otherwise made, in whole or in part, because the misrepresentations and omissions materially altered and/or concealed the true risks of investing in Defendants business and this Joint Venture (Exhibit "A") & (Exhibit "B").


## FIFTH CLAIM FOR RELIEF
### (Civil Theft – Colorado Revised Statutes)
### (Direct Claim Against Defendants Ava Cogburn and Rodney Cogburn and Defendant Roosters Guide & Outfitting Adventures, LLC d/b/a Rocky Mountain Natural Organics)

85.     Plaintiffs incorporate the preceding paragraphs 1 - 45, as if fully set forth herein.

86.     Pursuant to Colorado Revised Statutes, section 18-4-401(1), "[a] person commits theft when he or she knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception; or receives, loans money by pawn or pledge on, or disposes of anything of value or belonging to another that he or she knows or believes to have been stolen, and: (a) Intends to deprive the other person permanently of the use or benefit of the thing of value; (b) Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit; [or] (c) Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use or benefit."

87.     Defendants Ava Cogburn and Rodney Cogburn and Defendant Roosters have committed civil theft.

88.     Defendants Ava Cogburn and Rodney Cogburn and Defendant Roosters knowingly obtained, retained, or exercised control over a thing of value, to wit, at least Six Hundred Ninety Four Thousand Dollars and nine cents $694,269.09, belonging to Plaintiffs or by deception, all of which Plaintiffs demanded to be returned in their November 23, 2019, letter emailed and mailed to Defendants.

89.     Defendants Ava Cogburn and Rodney Cogburn and Defendant Roosters knowingly obtained, retained, or exercised control over these things of value with the intent to deprive Plaintiffs permanently of the use or benefit of at least Six Hundred Ninety-Four Thousand - Two Hundred and Sixty Nine Dollars and nine cents ($694,269.09).

90.     Defendants Ava Cogburn and Rodney Cogburn and Defendant Roosters refusal to return at least Six Hundred Ninety-Four Thousand - Two Hundred and Sixty Nine Dollars and nine

cents ($694,269.09), belonging to Plaintiffs or even respond to the emailed November 23, 2019, demand is evidence of Defendants specific intent to permanently deprive Plaintiffs of these things.

91.     Plaintiffs have been injured for actual damages as a result of Defendants Ava Cogburn and Rodney Cogburn and Defendant Roosters' civil theft of Plaintiff's personal property in a sum in at least Six Hundred Ninety Four Thousand - Two Hundred and Sixty Nine Dollars and nine cents ($694,269.09), and Plaintiffs are entitled to treble damages, costs of suit, and a reasonable attorney's fee pursuant to Colorado Revised Statutes, section 18-4-405.

### SIXTH CLAIM FOR RELIEF
### BREACH OF CONTRACT

92.     Plaintiffs incorporate the preceding paragraphs 1 - 45, as if fully set forth herein.

93.     At all times material hereto the Defendant Roosters Guide & Outfitting Adventures, LLC d/b/a Rocky Mountain Natural Organics entered into Exhibits "A" & "B", attached and incorporated herein and hereto.

94.     At all times material hereto the Defendant failed or refused to honor and abide by the terms of the express agreement it entered into.

95.     At all times the Defendant is in breach of contract (Exhibit "B"), as set forth within paragraphs 1 - 45, above.

96.     As a direct and proximate result of the Defendants breach, the Plaintiffs are economically damaged in an amount exceeding the jurisdiction of this Court and to be determined at trial.

WHEREFORE, the Plaintiffs pray that this Honorable Court grant damages against the Defendant, actual and compensatory, as well as any and all other relief deemed just and proper. Plaintiffs reserve the right to amend this claim for damages in order to seek punitive damages, attorney fees and costs.

## **PRAYER FOR RELIEF AS TO ALL COUNTS**

WHEREFORE, for the reasons alleged herein, Plaintiff prays for this Court to enter judgment against the Defendants and in favor of Plaintiff for all damages incurred by Plaintiff, including treble or other statutory damages, costs, expenses, attorneys' fees, pre-judgment and post-judgment interest as provided by Colorado and/or Federal law, and such further relief to which it may be entitled, including upon a finding warranting punitive damages, damages appropriately setting this forth.

## **JURY DEMAND**

**Plaintiffs demand a jury trial in this matter**.

DATED this 16th day of December, 2019.

S/ *Craig A. Brand, Esq.*

_____

**Craig A. Brand, Esq.**
Mystic Law, P.A.
6411 S. Jamaica Circle
Englewood, Colorado 80111
Telephone: (305) 878-1477
E-mail: Craig@ganjalaw.com
Attorney for Plaintiffs

## **VERIFICATION OF COMPLAINT**

ALON BARAK & KR8TIV GROUP, LLC hereby certify that the facts asserted in the foregoing verified complaint are true and accurate to the extent of our knowledge and made from first-hand knowledge or information.

_____          Date: December 16, 2019.
ALON BARAK

_____                    Date: December 16, 2019.

KR8TIV GROUP, LLC