IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03556-RM-GPG

ALON BARAK, individually,
KR8TIV GROUP, LLC, a Delaware limited liability
company, and KR8TIV, LLC, a Wyoming
limited liability company,

    Plaintiffs/Counter-Defendants,

v.

ROOSTER'S GUIDE & OUTFITTING ADVENTURES,
A/K/A ROCKY MOUNTAIN NATURAL ORGANICS,
RODNEY COGBURN, individually, AVA COGBURN,
individually, SHEREE COGBURN WALCHER, individually,
and BEN WALCHER, individually,

    Defendants,

and

ROOSTER'S GUIDE & OUTFITTING ADVENTURES,
A/K/A ROCKY MOUNTAIN NATURAL ORGANICS,
RODNEY COGBURN, individually, AVA COGBURN,
Individually,

    Counter-Plaintiffs.
_____/

## COUNTER-DEFENDANTS' AMENDED[1] MOTION FOR SUMMARU JUDGMENT ONCOUNTER-PLAINTIFFS' CLAIM OF CIVIL THEFT AGAINST COUNTER-DEFENDANTS
### [THIRD COUNTERCLAIM-DOCUMENT NO. 161]

Pursuant to Fed. R. Civ. P. 56 and D.C.Colo.LCivR 56.1, Counter-Defendants, ALON

BARAK, KR8TIV GROUP, LLC, a Delaware limited liability company, and KR8TIV, LLC, a

---

[1] The original Motion for Summary Judgment has been reformatted pursuant to Judge Moore's Civil Practice Standards. A separate Statement of Undisputed Material Facts in support of this Amended Motion is also being filed contemporaneously herewith.

1

Wyoming limited liability Company (together "Movants" or "Counter-Defendants"), herewith move this Court for entry of a summary judgment against the Counter-Plaintiffs, ROOSTER'S GUIDE & OUTFITTING ADVENTURS, LLC, AKA ROCKY MOUNTAIN NATUIRAL ORGANICS ("Rooster's), RODNEY COGBURN, and AVA COGBURN's Third Claim of the three (3) Counterclaims set forth in Counter-Plaintiffs' Second Amended Answer and Counterclaims (D.[2] 161). [Defendants, SHEREE COGBURN WALCHER and BEN WALCHER, are not parties to the Counterclaims.] As grounds therefore, Movants will demonstrate unto this Court as follows:

## PROCEDURAL HISTORY

The pleadings are at issue on Plaintiffs' Third Amended Complaint (D. 99), Defendants, Counter-Plaintiffs' Second Amended Answer and Counterclaims (D. 161) and Counter-Defendants' Answer and Affirmative Defenses to Second Amended Counterclaims (D. 162). Although the Third Claim is titled, "Rooster's Claim of Civil Theft against Plaintiffs," a plain reading of paragraphs 1 through 48 and the *ad damnum* clause of the Second Amended Counterclaims demonstrate that that not only Rooster's, but also Rod and Ava are seeking relief under all three Counterclaims.

## STATEMENT OF UNDISPUTED FACTS

1. The Parties have stipulated to Jurisdiction and venue. MSUMF.

2. Plaintiff/Counter-Defendant, ALON BARAK ("Barak"), is a citizen of the State of California residing and working in and from Beverly Hills, California 90212. MSUMF 1.

---

[2] The abbreviation "D." will be used in place of "Document No."

3. Plaintiff/Counter-Defendant, KR8TIV GROUP, LLC, is a single member Delaware limited liability company ("KR8TIV-Delaware), owned and controlled by Plaintiff, ALON BARAK, a citizen and resident of the State of California. D. 151.

4. Plaintiff/Counter-Defendant, KR8TIV, LLC, is a single member Wyoming limited liability company ("KR8TIVWyoming"), owned and controlled by Plaintiff, ALON BARAK, a citizen and resident of the State of California. D. 151.

5. At all times material hereto, Defendant, ROOSTER'S GUIDE & OUTFITTING ADVENTURES, A/K/A ROCKY MOUNTAIN NATURAL ORGANICS ("Roosters"), has been a Colorado Limited Liability Company located in Mesa County, Colorado. D. 151.

6. "Farm" means Lot 1 (street address 2172 45 ½ Road), Lot 2 (street address 2168 45 ½ Road) and Lot 3 (street address 2174 45 ½ Road), Wild Mustang Estates, Mesa County, Colorado. See MSUMF

7. During the time period from January 1, 2018, through the date the lawsuit in this case was filed on December 19, 2019, Rodney Cogburn and Ray Cogburn, the son of Rodney and Ava Cogburn, each have owned an undivided 50% interest in Lot 1 of the Farm, Benjamin Walcher and Sheree Walcher, Husband and Wife, have owned Lot 2 of the Farm, and Rodney Cogburn and Ava Cogburn, as Joint Tenants, have owned Lot 3 of the Farm. *MSUMF[3] 1*.

8. Defendant, Sheree Cogburn Walcher, acknowledged that she had no objective evidence of Plaintiffs stealing anything. *MSUMF 2*.

---

[3] All "MSUMF" references are to the movant's Separate Statement of Undisputed Material Facts filed in support of this motion for summary judgment.

9.      Defendants, Counter-Plaintiffs, Rooster's Rodney Cogburn acknowledged that he had no objective evidence of Noah Woollen, Emanuel Prado, Jordan Parker, or Lorenzo Castillo stealing the 20,000 pounds of hemp from the Farm. *MSUMF 3*.

10.     Defendant, Ben Walcher, acknowledged that he had no objective evidence that Plaintiffs or Noah Woollen stole hemp off of the Farm. *MSUMF 4*.

11.     Jim Roberts doing business as A.C.E.S. security provided security for the Farm during the Joint Venture hemp grow. *MSUMF 5*.

12.     Lorenzo Castillo was employed at the Farm from July to right before the harvest in early October; his duties were to plant and water the hemp plants. Shortly before the harvest, Mr. Castillo witnessed Rodney Cogburn stating that he intended to cut Alon Barak out of the deal. *See MSUMF 6*.

13.     On July 15, 2019, KR8TIV Group, owned exclusively by Alon Barak, and Rooster's entered into the written Joint Venture Contract that is attached to the Declaration of Alon Barak as Exhibit "A." *See Barak Declaration*, ¶¶ 11 and 15.

14.     The purpose of the Joint Venture was to plant, cultivate, harvest and sell "hemp or marijuana on 10 acres of the "Farm."" The only licenses obtained by Rooster's and any of the other Defendants authorized the cultivation of industrial hemp. *See* D. 1-1 (Exhibit "A" to Complaint). Only hemp clones and plants were planted by the joint venture. All of the hemp clones and plants for the hemp grow were paid for by Plaintiffs. *See Barak Declaration*, ¶¶ 15 and 19.

15.     The hemp grow occurred from Mid-July to Saturday, October 26, 2019, when Noah Woollen accompanied by his brother-in-law, Jordan Parker, left the Farm. *See Barak Declaration*, ¶¶ 15 through 51, and *Declaration of Noah Woollen, Declaration*, ¶¶ 8 through 27.

16. In paragraph 24 of his Declaration, Alon Barak has declared under penalty of perjury:

> By September 16, 2019, I had already arranged for Rooster's to have received $263,000.00 by bank wire and had expended another $205,452.25 on the joint venture and I had advanced the Cogburns $25,000.00 in cash. I told the Cogburn's that based on the money that had been expended from my end to date, I required a 50/50 split of the profits if I was going to put any more money in, as opposed to the 51/49 split in their favor in the July 15, 2019, contract. As the Cogburns had exceeded the budget with their growing hires and quick spending, they agreed to the new partnership split after they had a family meeting with Ben and Sheree Walcher (the Walchers' controlled and maintained the other CDA hemp licenses on the Farm). Thereafter, I talked through the terms with Ava and Rod who told me the Family agreed, and so on my next trip to Colorado, I brought a draft of what we all had agreed to

17. The Joint Venture Contract attached as *Exhibit "B"* to the Declaration of Alon Barak was executed by the parties before a Notary Public at the home of the Cogburns on Tuesday, September 24, 2019. That contract revised the net profit split from 51% for Rooster's and 49% for the Plaintiffs to 50& for Rooster's and 50% for the Plaintiffs.

18. In paragraphs 17 through 19 and 24 through 27 of his Declaration, Noah Woollen has declared under penalty of perjury:

> On the morning of Wednesday, October 9, 2019, I spoke with Lorenzo Castillo who advised me that last Friday at the end of his work shift, Ava had told him not to return the next week, and that he believed the Family and their hired workers were already harvesting the hemp. [¶ 17]
>
> I immediately called Alon and told him what I learned, and he asked me to immediately drive to the Farm and assess the situation, which I did and arrived around dinner time on October 9, 2019. I transported one trim machine to the Farm in my truck and arranged for a second trim machine to be shipped to Grand Junction a few days later. [¶ 18]
>
> When I arrived, I saw that most of the Abacus plants and T1s had been harvested and were out of the fields. At Alon's direction, I stayed briefly and then drove back to Denver. I subsequently rented an RV, just large enough for myself and my brother-in-law Jordan Parker, who was also an experienced hemp grower, to live in while the harvest and post-harvest process was going on. Rodney and Ava allowed us to park the RV on The Farm during this period. [¶ 19]

> I stayed at the Farm until the late afternoon on Saturday, October 26, 2019, when Jordan Parker and I, assisted at times by Ava, packed up our belongings, including placing one trim machine in the small, rented trailer. Before we left Ava and Sheree and the security guard all walked around the vehicle, looking at everything they could concerning the RV and the small tool trailer that was behind it. There was not one bit of hemp in any of the compartments of anything for if so, for sure, they would have stopped us. Also if we had an RV and trailer full of rotting biomass, there would have been no doubt as to the odor emanating. When Ava, Sheree and security guard inspection were done with their search, we said, "We're leaving", they said, "Okay". The security guard permitted us to drive and leave, , and we drove off without any adversity or problems. [¶ 24]
>
> We started for Denver, but only got as far as the access road from the Farm to the main road when the RV broke down. Rodney thankfully came to help us fix it. [¶ 25]
>
> As Jordan and I were about to leave in the repaired RV, I received a call claiming that I had stolen the logbook. I attempted to return to prove to the Cogburns that I had not stolen the logbook, but the gate to the Farm was locked and I was not allowed to enter. Jordan and I then drove to Denver as there was nothing further we could do and I didn't want to cause any kind of Altercation. [¶ 26]
>
> At no time on October 26, 2019, or at any other time, did any member of the Cogburn Family personally or directly accuse us of stealing any portion of the harvest. [¶ 27]

19. Alon Barak has declared under penalty of perjury that he has never stolen or removed, nor has he directed anyone to steal or remove, any of the Joint Venture's hemp harvested on the Farm. *See* Barak *Declaration*, ¶ 67.

20. Noah Woollen, the consultant for the hemp grow, has declared under penalty of perjury that "at no time did [he], nor Jordan Parker, ever steal, or cause to be stolen, any portion of the Joint Venture's hemp grow. *See Noah Woollen Declaration*, ¶ 28.

21. Although Rooster's alleges a claim for civil theft against the Plaintiffs, the following additional facts vitiate such a claim:

   a. On October 8, 2019, two (2) forty foot trailers were delivered to the Farm, one paid with Rooster's check #3570 dated October 8, 2019, for $750.00 executed by Ava

Cogburn payable to Minor Storage, Inc. for the trailer rental. , and one paid with Rooster's check 2610 dated October 8 2019, payable to Colorado Storage for a Conex trailer rental. Rodney already owned a fifth wheel (used to haul trailers). *See MSUMF* 7.

b. Although Noah Woollen and his brother-in-law, Jordan Parker, left the Farm on Saturday, October 26, 2019, Defendants/Counter-Plaintiffs did not report the alleged theft until Tuesday morning, October 29, 2019. *See MSUMF* 8.

c. Plaintiffs' counsel issued a Preservation of Evidence Letter to Rooster's on November 23, 2019 and November 30, 2019. *See MSUMF* 9.

d. The Cogburns reported the 268 pounds of hemp biomass that had been delivered by to Rixxon Extraction on October 24, 2019, as stolen. *See Noah Woollen Declaration*, ¶ 22.

e. On November 1, 2019, Plaintiff, KR8TIV, LLC, bank wired $5,000.00 to Rixxon Extraction to have the Joint Venture's hemp biomass processed into CBD oil. Rixxon Extraction processed the Joint Venture's biomass into 14.71 pounds of. CBD oil. *MSUMF* 10.

f. On November 6, 2019, the Mesa County Sheriff's Department took possession of the 14.71 pounds of CBD oil. *MSUMF* 11

g. In October 2020, after Investigator Mike Dillon of the Mesa County Sheriff's Department closed the case, Ava Cogburn took possession of the oil, including that belonging to the Plaintiffs without the Plaintiffs knowledge or consent, and she and Rodney claim they burned it. *See MSUMF* 12.

e. On December 31, 2019, a copy of the issued Complaint with Exhibits "A" through "D" and Summons for Rooster's, Rodney Cogburn, Ava Cogburn, Sheree Walcher and Ben Walcher were also mailed by Second Day United States Post Office Priority Mail to all five (5) original Defendants. *MSUMF* 13.

f. Following Officer Parmenter's initial contact with the Cogburns, a case was opened and Investigator Robert Williams was assigned to investigate. Upon visiting the Farm, an inventory was taken of the remaining hemp grow, which totaled 2,521 pounds, including 781 pounds of smokable hemp and 1,740 pounds of hemp biomass. This inventory was produced by Defendants. *MSUMF* 13.

g. Ava Cogburn provided contracts between the parties to Mesa County Sheriff Department Investigator Roberts Williams, and these were produced pursuant to a Subpoena for Records issued by Defendants' Counsel to the Mesa County Sheriff's Department. *MSUMF* 14.

h. In his case closing report issued October 1, 2019, MCSD Investigator Mike Dillon stated:

> Based on information I received from a web-site for a Hemp transport company, anything less than 1500 LBS can be transported in a box type van which would be equivalent to a 1 ton pickup with a box bed. Anything more and it will not fit and will overload. Anything over 1500 LBS and up to approximately 6000 LBS needs to be transported in a transport box truck, a large commercial truck with large box bed. <u>Anything more than 6000 LBS would need to be transported by Truck and Trailer, or commonly referred to as an 18-wheeler</u>.

*MSUMF* 15.

i. The Defendants first disclosed their use of the Signal App when they produced Ava' Cogburn's iPhone records on August 9, 2022. Over the weekend of August 13-14,

Plaintiffs discovered that (1) Ava's text messages for the critical time period from October 22, 2019, through October 26, 2019, were missing, and (2) during the critical time period immediately preceding their October 29, 2019, report to the Mesa County Sheriff, the Defendants utilized the encrypted Signal Chat Room App to exchange secret text messages. [Reading up from the last page reflecting the missing text messages, and messages 32 through 53 reading up from higher number.] MSUMF 16.

j.  On August 15, 2022, Plaintiff requested Defendants produce the Signal App chats by Friday, April 19. Defendants counsel subsequently stated that the Defendants have no Signal App chat room records or any other chat room records of conversations relating to the Joint Venture Hemp in their possession, custody and/or control. The issue was brought up at the September 13, 2022, Discovery Dispute Conference.

k.  On September 23, 2022, Counsel for Defendants sent out Subpoenas to two (2) Signal Entities requesting production "your office's complete file related to the contents, messages, or communications held in the account of [any of the parties email addresses and cell phone numbers] from the period July 1, 2019 to January 31, 2020, etc." The Subpoenas were returnable October 17, 2022. *MSUMF* 17.

l.  Beginning on October 16, 2022, Plaintiffs' Counsel requested Defendants' Counsel to provide any documents produced by the Signal entities. Finally, On October 24, 2022, seven (7) days prior to the dispositive motion cutoff, Defendants' Counsel emails the attached letter and two (2) newly issued Subpoenas for Production to the Signal Entities returnable November 14, 2022. *MSUMF* 18.

# STANDARD OF REVIEW

> Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 332 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). . "[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014)(quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).).

*Stuhmer v. Girdner*, No. 20-cv-00486-SKC, 2021 WL 5384406, at *1 (D. Colo. Nov. 18, 2021).

> A motion for summary judgment serves the purpose of testing whether a trial is required. *Heidman v. S. Lake City*, 348 F.3d 1182 1185 (10th Cir. 2003). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).. A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

*Grayden v. Spring Creek Energy Partners, LLC*, No. 21-cv-00106-RM-NRN, 2021 WL 5867112,

at *5 (D. Colo. Dec. 10. 2021).

> The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Appollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

*Id*. at *6.

> "[T]he content of summary judgment evidence must be generally admissible and...if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, i.e., the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pennsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

*Ibid.*

# ARGUMENT

In this diversity action, Colorado Substantive law applies. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 621, 82 L.Ed 1188 (1938). Counter-Plaintiff Rooster's third counterclaim alleges a civil theft claim under § 18-4-401 and § 18-4-405, Colorado Revised Statutes.

§ 18-4-401(1), C.R.S., provides:

> **(1)** A person commits theft when he or she knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception; receives, loans money by pawn or pledge on, or disposes of anything of value or belonging to another that he or she knows or believes to have been stolen, and:
> **(a)** Intends to deprive the other person permanently of the use or benefit of the thing of value;
> **(b)** Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit;
> **(c)** Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use or benefit;
> **(d)** Demands any consideration to which he or she is not legally entitled as a condition of restoring the thing of value to the other person;
> **(e)** Knowingly retains the thing of value more than seventy-two hours after the agreed-upon time of return in any lease or hire agreement; or
> **(f)** Intentionally misrepresents or withholds a material fact for determining eligibility for a public benefit and does so for the purpose of obtaining or retaining public benefits for which the person is not eligible.

§ 18-4-401(1), C.R.S., provides: the civil remedy sought by Rooster's in the third Counterclaim.

> A person commits theft under section 18–4–401(1) when he or she "knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception," and acts intentionally or knowingly in ways that deprive the other person of the property permanently. See 18–4–401(1)(a)-(d). We have held that the statute requires, inter alia, "the specific intent to permanently deprive the owner of the benefit of property."

*Van Rees v. Unleaded Software, Inc.,* 2016 CO 51, ¶ 21, 373 P.3d 603, 608 (citing *Itin v. Ungar*, 17 P.3d 129, 134 (Colo. 2000).

> "[Civil theft, like criminal theft, requires the specific intent of the defendant to permanently deprive the owner of the benefit of the property."

*In re Estate of Chavez*, 2022 COA 89, ¶ 46, 2022 WL 3093720 (Aug. 4, 2022)(quoting *Scott v. Scott*, 2018 COA 25, ¶ 26.).

> We have acknowledged that because section 18-4-405 does not define theft, robbery, or burglary, these terms may be understood within the broader criminal statutory framework, given the statute's location in the Criminal Code. *West*, 143 P.3d at 1040. In other words, to recover on a claim for civil theft under section 18-4-405, a rightful owner of stolen property must establish the statutory elements of criminal theft, including the requisite culpable mental state. *See, e.g.*, § 18-4-401 ("A person commits theft when he or she knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception...."); [*Itin v. Ungar*, 17 P.3d 129, 134 (Colo. 2000)](rightful owner of stolen property may recover treble damages, fees, and costs under section 18-4-405 "[o]nly upon proof of the criminal act of theft").

*Bermel v. BlueRadios, Inc.*, 2019 CO 31, ¶ 31, 440 P.3d 1150, 1157.

The foregoing facts clearly demonstrate the futility of the Counter-Plaintiffs' Third Counterclaim against the Counter-Plaintiffs. The Counterclaim is simply a red herring posited to divert the trier of fact from the contradictory elements which will support Plaintiffs' civil theft claim against all Defendants. A Summary Judgment should be granted in favor of Counter-Defendants, ALON BARAK, KR8TIV GROUP, LLC, a Delaware limited liability company, and KR8TIV, LLC, a Wyoming limited liability Company, on the Counter-Plaintiffs' Civil Theft Counterclaim.

WHEREFORE, Counter-Defendants, ALON BARAK, KR8TIV GROUP, LLC, a Delaware limited liability company, and KR8TIV, LLC, a Wyoming limited liability Company, respectfully pray that this Court will enter an order granting this Motion for Summary Judgment on Counter-Plaintiff, ROOSTER'S GUIDE & OUTFITTING ADVENTURS a/k/a ROCKY MOUNTAIN NATURAL ORGANICS, RODNEY COGBURN and AVA COGBURN's Civil Theft Claim (Third Claim of the Counterclaim) against Counter-Defendants.

DATED November 1, 2022.

Respectfully submitted,

S/ Craig A. Brand

_____

**Craig A. Brand, Esq.**
Mystic Law, P.A.
4650 Indian Creek Road
Loveland, Colorado 80538
Telephone: (305) 878-1477
E-mail: Craig@ganjalaw.com
Attorney for Plaintiff/Counter-Defendant/
Third-Party Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 1, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing via email to:

James F. Fosnaught, Esq.
jff@mountainlawfirm.com
Shoshana Rosenthal, Esq.
sr@mountainlawfirm.com
KARP NEU HANLON, P.C.
201 14th Street, Suite 200
Glenwood Springs, CO 81601
Phone: (970) 945-2261

S/Craig A. Brand

_____

**Craig A. Brand, Esq.**
Mystic Law, P.A.
4650 Indian Creek Drive
Loveland, Colorado 80538
Telephone: (305) 878-1477
E-mail: Craig@ganjalaw.com
Attorney for Plaintiffs/Counter-Defendants