IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03556-RM-GPG

ALON BARAK, individually, et al.,

     Plaintiffs/Counter-Defendants,

v.

ROOSTER'S GUIDE & OUTFITTING ADVENTURES,
A/K/A ROCKY MOUNTAIN NATURAL ORGANICS,
et al.,

     Defendants,

and

ROOSTER'S GUIDE & OUTFITTING ADVENTURES,
A/K/A ROCKY MOUNTAIN NATURAL ORGANICS,
RODNEY COGBURN, individually, AVA COGBURN,
Individually,

     Counter-Plaintiffs.

_____/

### PLAINTIFFS' AMENDED MOTION FOR AN ADVERSE INFERENCE AND SANCTIONS AGAINST DFENDANTS FOR SPOLIATION OF THE EVIDENCE

Pursuant to Fed.R.Civ.P. 7(b) and D.C.COLO.LCivR 7.1, and Judge Moore's Practice

Standards, Plaintiffs/Counter-Defendants, ALON BARAK, KR8TIV GROUP, LLC, a Delaware

limited liability company, and KR8TIV, LLC, a Wyoming limited liability Company (together

"Movants"), **move this Court for entry of an Order Issuing an Adverse Inference and**

**Sanctions against Defendants, ROOSTER'S GUIDE & OUTFITTING ADVENTURS, LLC,**

**AKA ROCKY MOUNTAIN NATUIRAL ORGANICS ("Rooster's"), RODNEY COGBURN**

**("Rod"), AVA COGBURN ("AVA"), SHEREE COGBURN WALCHER ("Sheree") and**

**BEN WALCHER ("Ben"), for Spoliation of the Evidence** concerning the facts and

1

circumstances surrounding the removal of harvested smokable hemp flower, hemp biomass, and hemp oil from the Farm consisting of Lots 1, 2 and 3, WILD MUSTANG ESTATES, Mesa County, Colorado as well as the destruction of electronic evidence. As grounds therefore, they state:

## **RELIEF SOUGHT**

Movants seek an Order providing that an adverse inference shall be read to the trier of fact by the Court during the preliminary jury instructions, by Counsel for the parties during opening statements, during trial and during closing arguments, and read by the Court as part of the closing jury instructions, as follows:

## **PART I**

The Court instructs you that during the time period from October 27 through October 28, 2019, RODNEY COGBURN, AVA COGBURN, SHEREE COGBURN WALCHER and BEN WALCHER, used a private chat room to send and receive text messages with their cell phones, and RODNEY COGBURN, AVA COGBURN, SHEREE COGBURN WALCHER and BEN WALCHER, intentionally failed to keep a record of their messages exchanged in the chat room. The Court instructs you that you are to infer that the missing text messages from AVA COGBURN's iPhone and the missing private chat room messages concerned the Defendants removing a substantial amount of the Joint Venture's smokable hemp flower and hemp biomass from the Farm during October 27 and/or October 28, 2019, in order to intentionally deprive ALON BARAK and his companies, KR8TIV GROUP, LLC, and KR8TIV, LLC, of the ability to be reimbursed for his investment on the Joint Venture and to share in Fifty Percent (50%) of the net profits. The Court further instructs you that you are to ignore any defense that the Joint Venture's hemp crop was over the legal limits of permissible growth for purposes of harvest.

**PART II**

The Court instructs you that from October 27, 2019, until they personally burned it in approximately January 2021, Rodney and Ava Cogburn had in their possession 2,521 pounds of the Joint Venture's biomass and smokable flower. From October 21, 2019, until they personally burned it in approximately January 2021, Rodney and Ava Cogburn had in their possession 14.71 pounds of the Joint Venture's CBD oil extracted by Rixxon Extraction. At no time did Rodney Cogburn and Ava Cogburn send any quantity of that hemp or CBD oil for analysis to determine whether it contained in excess of the 0.3% THC maximum threshold for saleable hemp products. At no time did Rodney Cogburn and Ava Cogburn provide the Plaintiffs, who were equal owners and partners to the Joint Venture, with the opportunity to see, know about, test, analyze, and inspect that hemp biomass, smokable flower and oil burned by the Defendants, Ava and Rodney Cogburn, in order to determine whether it contained in excess of the 0.3% THC maximum threshold for saleable hemp. The Court further instructs you that you are to ignore any defense that the 2,521 pounds of the Joint Venture's biomass and smokable flower and the 14.71 pounds of CDB oil contained over the legal limits for purposes of Joint Venture's harvest.

**PROCEDURAL HISTORY**

The pleadings are at issue on Plaintiffs' Third Amended Complaint (D. 99)("Complaint"), Defendants, Counter-Plaintiffs' Second Amended Answer and Counterclaims (D. 161)("Counterclaim") and Counter-Defendants' Answer and Affirmative Defenses to Second Amended Counterclaims (D. 162). Plaintiffs' Five (5) Count Complaint alleges: (1) Breach of Contract against Rooster's; (2) Breach of Contract against Rod and Ava as alter egos of Rooster's; (3) Conversions against all Defendants; (4) Civil Theft against Rooster's Rod, Ava, Sheree and Ben; and (5) Unjust Enrichment against Rod, Ava, Sheree and Ben. The Three Count

Counterclaim filed by Rooster's Rod and Ava (D. 161) alleges: (1) Rooster's Breach of Contract claim against all Counter-Defendants; (2) Rooster's, Rod and Ava's Fraud in the Inducement claim against all Counter-Defendants; and (3) Rooster's Civil Theft claim against all Counter-Defendants.

## BACKGROUND

1.      During the time period from January 1, 2018, through the date the lawsuit in this case was filed on December 19, 2019, Rod and Ray Cogburn owned Lot 1, Ben and Sheree owned Lot 2, and Rod and Ava owned Lot 3  All three lots are located in Mesa County, Colorado, and will be referred to, in the aggregate, as the "Farm" hereinafter.  Composite Exhibit "1"; Composite Exhibit "4" (MCSD Records Custodian, Photographs of Farm with Each Defendant's Residences).

2.      On July 15, 2019, the Parties entered into the Joint Venture Agreement. The purpose of the Joint Venture was to plant, cultivate, harvest and sell "hemp or marijuana on 10 acres of the Farm." Only specific genetics of hemp clones and plants were planted by the joint venture.  All of the hemp clones and plants for the hemp grow were paid for by Plaintiffs.  Barak Decl.[1], ¶¶ 15 and 19, D. 195-1.

3.      The hemp grow occurred from Mid-July 2019 to Saturday, October 26, 2019, when Noah Woollen, the Joint Venture's lead grower, accompanied by his brother-in-law, Jordan Parker (also an employee of the Joint Venture), left the Farm. Barak Decl., D. 195-1, ¶¶ 15 through 51, and Noah Woollen Decl., D. 186-1, ¶¶ 8 through 27.

4.      In paragraph 24 of his Declaration (D. 195-1), Alon Barak has declared:

By September 16, 2019, I had already arranged for Rooster's to have received $263,000.00 by bank wire and had expended another $205,452.25 on the joint venture and I had advanced the Cogburns $25,000.00 in cash. I told the Cogburn's that based on the money that had been expended from my end to date, I required a

---

[1] The abbreviation "Decl." shall be used in place of "Declaration" in this Motion

50/50 split of the profits if I was going to put any more money in, as opposed to the 51/49 split in their favor in the July 15, 2019, contract. As the Cogburns had exceeded the budget with their growing hires and quick spending, they agreed to the new partnership split after they had a family meeting with Ben and Sheree Walcher (the Walchers controlled and maintained the other CDA hemp licenses on the Farm). Thereafter, I talked through the terms with Ava and Rod who told me the Family agreed, and so on my next trip to Colorado, I brought a draft of what we all had agreed to.

5. The Joint Venture Contract (Barak Decl. Exhibit "B" (<u>D. 195-1</u>)) was executed by the parties before a Notary Public at the home of the Cogburns on Tuesday, September 24, 2019. That contract revised the net profit split from 51% in favor of Rooster's and 49% for the Plaintiffs to 50% for Rooster's and 50% for the Plaintiffs.

6. <u>In Addition To The Fraudulent Testimony Of Rod And Ava Pointed Out In Paragraph 19 Below, Defendants' Testimony Is Tainted With Fraudulent Representations</u>:

    a. On or about June 22, 2022, Defendants provided two separate fraudulent July 15, 2019, contracts to Plaintiffs as part of their Fed. R. Civ. P. 26(a)(1) disclosures. Composite Exhibit "16." When challenged, Defendants' counsel admitted that the Defendants did not possess the original emails conveying either contract. Exhibit "Composite Exhibits "16." Alon Barak, however, submitted the original email thread reflecting the actual transmittal by Rod Cogburn of the real July 15, 2019, Joint Venture Contract. <u>Exhibit "17</u>." **Defendants' submission of the two (2) fraudulent versions of the July 15, 2015, Joint Venture Contract (which they argue in their Motion for Summary Judgment (D. 189) does not even exist) completely contradicted the July 15, 2019, contract contained in the MSCD Records; Ava Cogburn had submitted to MCSD Investigator Williams during the investigation.** Composite Exhibit "4" (Exhibit to MCSD Records Custodian),.

b.  At her May 5, 2022, deposition, <u>Ava Cogburn testified that</u> Cheryl Chandler, a local Realtor present at the Notarized September 24, 2019, Joint Venture Contract signing, told Ava that Ava and Rodney should sign the contract, because they live in Mesa County and the notary is from Garfield County, and, therefore, the document was illegal and the Cogburns would later be able to void it. Ava testified that she knowingly and intentionally wanted the written contract to be null and void based on the technicality that Cheryl Chandler "allegedly" was providing and that she <u>wasn't going to disclose</u> this to the Plaintiff so that she could later get out of the contract (after taking the Plaintiffs' monies). <u>Exhibit "2", Ava Cogburn Depo.[2] P.[3]</u>.

c.  As a result of Ava Cogburn's May 5, 2022, deposition, the deposition of Realtor, Cheryl Chandler was taken and the follow up Declaration of Cheryl Chandler obtained. Realtor Cheryl Chandler, who was present when the September 24, 2019, Joint Venture Contract was signed and notarized at the Cogburn's home, has declared under penalty of perjury: ***I never told Ava Cogburn or Rodney Cogburn on September 24, 2019, or at any other time, that if the Joint Venture Contract was signed in Mesa County. Colorado and notarized by a notary from Garfield County, Colorado, the September 24, 2019, contract would be illegal and/or unenforceable, and if Ava did testify to that, Ava would be lying***. <u>D. 183</u>. [Emphasis added.]

---

[2] The abbreviation "Depo." shall be used in place of "Deposition" when citing deposition pages in this Motion.
[3] The abbreviation "P." or "PP." shall be used in place of "Page" or "Pages" in citing pages in this Motion

7.      In D. 186-1, PP. 17-19 and 24-27 of his Declaration, Noah Woollen declared:

On the morning of Wednesday, October 9, 2019, I spoke with Lorenzo Castillo who advised me that last Friday at the end of his work shift, Ava had told him not to return the next week, and that he believed the Family and their hired workers were already harvesting the hemp. [¶ 17]

I immediately called Alon and told him what I learned, and he asked me to immediately drive to the Farm and assess the situation, which I did and arrived around dinner time on October 9, 2019. I transported one trim machine to the Farm in my truck and arranged for a second trim machine to be shipped to Grand Junction a few days later. [¶ 18]

When I arrived, I saw that most of the Abacus plants and T1s had been harvested and were out of the fields. At Alon's direction, I stayed briefly and then drove back to Denver. I subsequently rented an RV, just large enough for myself and my brother-in-law Jordan Parker, who was also an experienced hemp grower, to live in while the harvest and post-harvest process was going on. Rodney and Ava allowed us to park the RV on The Farm during this period. [¶ 19]

I stayed at the Farm until the late afternoon on Saturday, October 26, 2019, when Jordan Parker and I, assisted at times by Ava, packed up our belongings, including placing one trim machine in the small, rented trailer. Before we left Ava and Sheree and the security guard all walked around the vehicle, looking at everything they could concerning the RV and the small tool trailer that was behind it. There was not one bit of hemp in any of the compartments of anything for if so, for sure, they would have stopped us. Also if we had an RV and trailer full of rotting biomass, there would have been no doubt as to the odor emanating. When Ava, Sheree and security guard inspection were done with their search, we said, "We're leaving", they said, "Okay". The security guard permitted us to drive and leave, and we drove off without any adversity or problems. [¶ 24]

We started for Denver, but only got as far as the access road from the Farm to the main road when the RV broke down. Rodney thankfully came to help us fix it. [¶ 25]

As Jordan and I were about to leave in the repaired RV, I received a call claiming that I had stolen the logbook. I attempted to return to prove to the Cogburns that I had not stolen the logbook, but the gate to the Farm was locked and I was not allowed to enter. Jordan and I then drove to Denver as there was nothing further we could do and I didn't want to cause any kind of Altercation. [¶ 26]

At no time on October 26, 2019, or at any other time, did any member of the Cogburn Family personally or directly accuse us of stealing any portion of the harvest. [¶ 27]

8.     Alon Barak has declared that he has never stolen or removed, nor has he directed anyone to steal or remove, any of the Joint Venture's hemp harvested on the Farm.   Barak Declaration, <u>D. 195-1</u>, ¶ 67.  Noah Woollen, the consultant for the hemp grow, has declared that "at no time did [he], nor Jordan Parker, ever steal, or cause to be stolen, any portion of the Joint Venture's hemp grow.  Noah Woollen Declaration, <u>D. 186-1</u>, ¶ 28.

9.     Following the Cogburn's initial report of the purported theft on Tuesday, October 29, 2019, taken by Mesa County Sheriff's Officer ("MCSD") Parmenter, MCSD Investigator Robert J. Williams was assigned to investigate the case (MCSD Case Mo. 2019-00035980).  On November 6, 2019, when she met with Investigator Williams at the MCSD, and Investigator Williams asked for her cellular phone, Ava Cogburn surrendered her iPhone to Investigator Robert Williams for a forensic investigation. <u>The forensic evaluation was performed by MCSD Forensic Computer Analyst Logan Waterman who was able to recover the messages from AT&T, but was unable to recover any messages from the Defendants' use of the Signal private chat room application commencing Saturday night, October 27, 2019</u>; he then provided the results to MCSD Investigator Robert J. Williams on November 7, 2019.  <u>Exhibit "5"</u>  (Declaration of Logan Waterman). Defendants were provided with a link to a software program where Defendants' counsel could "extract" SMS, MMS, and emails taken from Ava Cogburn's cell phone. [Confirmed in Defendants' portion of September 12, 2022, Joint Discovery Dispute Chart provided to the Magistrate Judge.] On or about August 9, 2022, Defendants' Counsel provided Plaintiffs with a file containing 2790 messages extracted from Ava's iPhone by MCSD Forensic Computer Analyst Waterman.  Although Alon Barak's own records confirm he received text messages and emails from Ava Cogburn between October 23, 2019, and October 26, 2019, and the same were provided to Defendants during discovery, <u>AVA COGBURN intentionally deleted</u>

or intentionally caused to be deleted, the outgoing and incoming text messages from October 23 through October 26, 2019, from her iPhone XS Max, thereby preventing Plaintiffs from ascertaining what other messages may have been deleted. Because of the missing Signal Application private chatroom messages discussed in paragraph 19 below (Defendants' have acknowledged they did not retain the Signal App chatroom messages), the dates of the missing iPhone messages roll right into the dates of the missing Signal Application private chatroom messages and demonstrate a willful intent to destroy any evidence as to the Defendants disposition of the Joint Venture's missing harvested hemp worth millions of dollars.

10.     Plaintiffs' counsel issued and mailed by prepaid First Class United States Mail two Preservation of Evidence Letters to Rooster's on November 23, 2019 and November 30, 2019. <u>Composite Exhibit "6"</u> (Declaration of Craig A. Brand, Esq.).

11.     On October 27, 2019,  Alon Barak spoke with Ava Cogburn by cellular telephone; after Ava Cogburn informed him that all the product was "purportedly" stolen and that there was nothing for Alon.  Alon then yelled and screamed at Ava, informing her that he would be coming to the farm, that he and his lawyer would be suing and that they better not be destroying or selling off the evidence. *See* Barak Decl., ¶ 6, <u>D. 195-1</u>.

12.     In the SMS messages extracted by the MCSD from Ava's iPhone, Ava Cogburn, on Sunday morning, October 27, 2019,  confirms that portion of the *Barak's* Declaration  by texting her family that, "*Alon & I had rounds. He said he's coming and entitled to come on our property anytime since he legally is 50 percent owner.*"  <u>Composite Exhibit "6"</u> (Decl. of Craig A. Brand, Esq., SMS Message Grid, Row 63.

13.     The Cogburns falsely and maliciously reported approximately 268 pounds of hemp biomass that had been delivered by to Rixxon Extraction on October 24, 2019 (Woollen Decl., ¶

22, <u>D. 186-1</u>) as stolen. On October 31, 2019, KR8TIV, LLC bank wired $5,500.00 to Rixxon Extraction to have the Joint Venture's hemp biomass processed into CBD oil for the Joint Venture. Rixxon Extraction processed the Joint Venture's biomass into 14.71 pounds of CBD oil. Barak Decl., ¶ 62, <u>D. 195-1</u>. On November 6, 2019, the Mesa County Sheriff's Department took possession of the 14.71 pounds of CBD oil based upon the Cogburn's intentional, false statement that the oil was stolen. <u>Composite Exhibit "3"</u> (MCSD Records Custodian Decl.). <u>Although the Cogburns had falsely reported the hemp processed into CBD oil as stolen, it was the property of the Joint Venture and Plaintiffs owned a fifty percent (50%) of that hemp oil, of which the Cogburns neglected to inform the MCSD, and the Cogburn's failed to inform the Plaintiffs as to what they were doing</u>.

14.     In October 2020, Investigator Mike Dillon of the Mesa County Sheriff's Department **closed the case**. <u>Composite Exhibit "7,"</u> (Depo of MCSD Deputy Mike Dillon, PP. 61:18-63:11 & Depo. Exhibit 3). <u>Ava Cogburn immediately contacted him and requested return of all of the Joint Venture' CBD oil to her.</u> (Composite Exhibit "7" (PP. 50:6-51:7 Ava Cogburn October 5-12, 2020, emails with Mike Dillon). <u>The oil would not have been returned if it was over the legal limit</u>. (PP. 53:24-54:7). Rodney and <u>Ava claimed they burned the CBD oil, including that half belonging to the Plaintiffs, received from the MCSD claiming it was illegal.</u> <u>Composite Exhibit "7,"</u> (May 5, 2022, Depo. of Ava St, Pierre Cogburn, P. 140:5-25 and P. 141:4-17).

15.     Ava Cogburn testified that she and Rodney Cogburn burned the oil in or after January 2021 **(13 months after this lawsuit was filed)** without testing it or disclosing the burn to Plaintiffs, thereby intentionally violating the Plaintiffs' evidence preservation letters and <u>preventing Plaintiffs from having clearly relevant evidence tested by a qualified laboratory</u>.

16.     Quoting from the May 5, 2022, Depo. of Ava, P. 140:5-15 and P. 141:13-17 contained in Composite Exhibit "7":

> **Page 140**
> ·5· · · · ·Q.· ·Speaking of that JV project, you
> ·6· ·collected oil from Rixxion (sic) Extraction.· Do you
> ·7· ·remember that, Jeremy Nolan?
> ·8· · · · ·A.· ·I didn't from him.
> ·9· · · · ·Q.· ·You didn't get the oil back that was
> 10· ·extracted by him?
> 11· · · · ·A.· ·I got it back from Mesa County Sheriff's
> 12· ·Department.
> 13· · · · ·Q.· ·And what did you do with it?
> 14· · · · ·A.· ·We burned it.
>
> **Page 141**
> 13· · · · ·Q.· ·And did you call Alon Barak up and let
> 14· ·him know?
> 15· · · · ·A.· ·No.
> 16· · · · ·Q.· ·Why?
> 17· · · · ·A.· ·I didn't do it.

17.     Following Officer Parmenter's initial contact with the Cogburns on October 29, 2019, MCSD Investigator Robert Williams was assigned to investigate. Upon visiting the Farm, an inventory was allegedly taken, by the Cogburn's or their staff, of the remaining hemp grow, which totaled 2,521 pounds. This inventory was produced by Defendants as Roosters760.  Exhibit "8," (Rooster's 26(a)(1) Production).  Exhibit "8" was not produced by Rooster's until December 16, 2020.  Rooster's Fed. R. Civ. P. 26(a)(1) production of documents did not commence until November 29, 2020.

18.     Rod and Ava claimed they burned the biomass in January 2021, **(13 months after this lawsuit was filed)**, without ever having tested the biomass, informed the Plaintiffs or having given the Plaintiffs an opportunity to test the hemp biomass, to determine whether it contained in excess of the 0.3% THC maximum for saleable hemp. Exhibit "9" (May 4, 2022, Dep. of Rodney Cogburn, PP. 147:1-150:22).

19.     **Completely refuting Rod and Ava's sworn testimony,** on October 10, 2019, at **3:51 a.m., Ava texts the family (not Alon): "Excellent results on all hemp from lab. High CBD!!!!" High CBD meaning the value of the product goes up. At 3:56 a.m. that day, Ben Walcher texts Family: "THC?" At 3:58 a.m., that day, Ava texts family: "Just under the legal 3%."** Exhibit "18." [First Supplemental Declaration of Craig A. Brand, Esq., Ava's iPhone text messages extracted by the MCSD, Page 21, Rows 178-180.]

20.     In May 2020, Investigator Williams transitioned out of investigations and the case was turned over to Investigator Mike Dillon. On October 1, 2020, Investigator Dillon closed the case. Composite Exhibit "4," Decl. of MCSD Records Custodian. Quoting a material portion of his report:

> Based on information I received from a web-site for a Hemp transport company, anything less than 1500 LBS can be transported in a box type van which would be equivalent to a 1 ton pickup with a box bed. Anything more and it will not fit and will overload. Anything over 1500 LBS and up to approximately 6000 LBS needs to be transported in a transport box truck, a large commercial truck with large box bed. Anything more than 6000 LBS would need to be transported by Truck and Trailer, or commonly referred to as an I8-wheeler. [Emphasis added.]

21.     **The Defendants first disclosed their use of the Signal App when they produced Ava' Cogburn's iPhone records on August 9, 2022. Over the weekend of August 13-14, Plaintiffs discovered that  (1) Ava's text messages for the critical time period from October 22, 2019, through October 26, 2019, were missing, and (2) during the critical time period immediately preceding their October 29, 2019, theft report to the Mesa County Sheriff, the Defendants utilized the encrypted Signal Chat Room App to exchange secret text messages**. Composite Exhibit "6"  (Decl. of Craig A. Brand, Esq., selected SMS pages-reading up from the last page reflecting the missing text messages, and messages 32 through 53 reading up; SMS Row

49, including Sunday, October 27, 2019, at 11:16 p.m., *by Ava Cogburn: "Did everyone download Signal App? Dad wants to share something"*).

22.     On August 15, 2022, Plaintiff requested Defendants produce the Signal App chats by Friday, April 19. Defendants counsel subsequently stated that the Defendants have no Signal App chat room records or any other chat room records of conversations relating to the Joint Venture's Hemp in their possession, custody and/or control. The issue was brought up at the September 13, 2022, Discovery Dispute Conference.  Counsel for the Defendants also represented that <u>NONE of the Defendants had the same cellular phones anymore and had changed them out shortly after the Joint Venture terminated</u>. <u>Composite Exhibit "6"</u> (Declaration of Craig A. Brand, Esq.). On September 23, 2022, Counsel for Defendants sent out Subpoenas to two (2) Signal Entities requesting production "your office's complete file related to the contents, messages, or communications held in the account of [any of the parties email addresses and cell phone numbers] from the period July 1, 2019 to January 31, 2020, etc." The Subpoenas were returnable October 17, 2022.  Composite <u>Exhibit 10</u>.

23.     Beginning on October 16, 2022, Plaintiffs' Counsel requested Defendants' Counsel to provide any documents produced by the Signal entities.  Finally, On October 24, 2022, seven (7) days prior to the dispositive motion cutoff, Defendants' Counsel emailed the attached letter and two (2) newly issued Subpoenas for Production to the Signal Entities returnable November 14, 2022.  <u>Composite Exhibit 11</u>. <u>Plaintiffs do not question the veracity of Attorney Fosnaught's representation that the missing signatures were the result of a clerical oversight</u>. On November 14, 2022, Attorney Fosnaught confirmed that no documents had been provided by the Signal Entities in response to the two new issued Subpoenas for Production.

24.    Lorenzo Castillo was employed at the Farm from July to right before the harvest in early October; his duties were to plant and water the hemp plants. Exhibit 12 (Lorenzo Castillo September 9, 2019, Depo. PP. 31:12-18, 33:5-9,  37:20-23, 51:8-11, 61:18 - 62:8.  **Shortly before the harvest, Mr. Castillo witnessed Rodney Cogburn stating that he intended to cut Alon Barak out of the deal**.  Exhibit 12, PP. 155:10 - 158:20.

## ARGUMENT

I.    **LEGAL REQUIREMENTS TO PROVE SPOLIATION.**

"Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Blangsted v. Snowmass–Wildcat Fire Prot. Dist.,* 642 F.Supp.3d 1250, 1259–60 (D. Colo. 2009) (internal quotation and citation omitted). A court has both inherent power as well as authority under Federal Rule of Civil Procedure 37(b)(2) to sanction a litigant for the destruction or loss of evidence. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 43–45 (1991); *Smith v. Nw. Fin. Acceptance, Inc.,* 129 F.3d 1408 (10th Cir.1997). A court can sanction a party for spoliation when "(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Burlington N. & Santa Fe Ry. Co. v. Grant,* 505 F.3d 1013, 1032 (10th Cir. 2007). When considering whether the spoliation was prejudicial, a court must first determine whether the evidence "would be relevant to an issue at trial." *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 621 (D. Colo. 2007). [Emphasis added.]

*Estate of Bogue v. Adams*, No. 18-cv-01425-DDD-MEH, 2021 WL 7368044, *10 (D. Colo. Apr. 5, 2021).

*Session v. Romero*, 2019 WL 324777, at *2 (D. Colo. Jan. 25, 2019) (noting that, for spoliation to exist, the parties against whom sanctions are sought must "themselves (be) responsible for the loss or destruction of the" evidence).

*Estate of Bogue*, 2021 WL 7368044, *11.

[S]poliation sanctions are proper when "(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Burlington N. & Santa Fe Ry. Co. v. Grant,* 505 F.3d 1013, 1032 (10th Cir. 2007).  But if the aggrieved party seeks an adverse inference to remedy the spoliation, it must also prove bad faith. "Mere negligence in losing or destroying

14

records is not enough because it does not support an inference of consciousness of a weak case." [*Aramburu v. Boing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997).] Without a showing of bad faith, a district court may only impose lesser sanctions. [*Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1220 (10th Cir. 2008).] We review a district court's finding of bad faith or "mere negligence" for clear error, *id.,* and the district court's decision to impose or deny spoliation sanctions for abuse of discretion. *Grant*, 505 F.3d at 1032.

*Turner v. Public Service Co. of Colorado*, 563 F.3d 1136, 1149-50 (10th Cir. 2009).

A moving party has the burden of proving, by a preponderance of the evidence, that the opposing party failed to preserve evidence or destroyed it. *See Ernest v. Lockheed Martin Corp.*, No. 07-cv-02938-WYD-KLM, 2008 WL 2945608, *1 (D. Colo. July 28, 2008). [….] Courts have found, and this court agrees, that a party seeking spoliation sanction must offer some evidence that relevant documents have been destroyed. *See Oldenkamp v. United Am. Ins. Co.*, No. 07-cv-601-TCK-PJC, 2008 WL 4682226, *2 (N.D. Okla. Oct. 21, 2008).

*Zbylski v. Douglas County School District*, 154 F.Supp.3d 1146, 1160 (D. Colo. 2015).

But to warrant an adverse inference instruction, a party must submit evidence of intentional destruction or bad faith. *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1220 (10th Cir. 2008); *see also Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997) ("The adverse inference must be predicated on the bad faith of the party destroying the records."). "Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case." *Aramburu*, 112 F.3d at 1407.

*Moreno v. Taos Cty. Bd. Of Comm'rs*, 587 F. App's 442, 444 (10th Cir. 2014).

[W]ith respect to electronically stored information, court may give adverse inference instruction only "upon finding that the party acted with the intent to deprive another party of the information's use in the litigation.

*Estate of Vallina v. County of Teller Sheriff's Office*, No. 15-cv-01802-RM-STV, 2017 WL 1154032, *7 (D. Colo. Mar. 28, 2017).

The sanction should be designed to [d]eter parties from engaging in spoliation; [p]lace the risk of an erroneous judgment on the party who wrongfully created the risk; and [r]estore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party."

*West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).

## II.     PLAINTIFFS HAVE BEEN PREJUDICED BECAUSE DEFENDANTS INTENTIONALLY DESTROYED RELEVANT EVIDENCE IN BAD FAITH

A.     Each of Plaintiffs' five claims (breach of contract against Rooster's; breach of contract-alter ego against Rodney and Ava Cogburn; Conversion against all Defendants; Civil Theft against all Defendants; and Unjust Enrichment against all Defendants) are substantially based upon what happened to the Joint Venture's hemp harvest between October 26, 2019, and October 29, 2019.  While Defendants testified to 20,000-30,000 pounds of the joint venture's hemp was harvested (albeit they now claim 13,000 pounds was stolen, 2,521 pounds was burned and 250 pounds was processed into CBD oil and burned ), Plaintiffs contend it was approximately 60,000 pounds based on the evidence.]

The use of the Signal Application private chat room by Rod, Ava, Sheree and Ben, starting late at almost midnight Sunday, October 27, 2019, reflect a concerted intentional effort to prevent disclosure of critical information relating to the removal of the substantial amount of the Joint Venture's smokable flower and hemp biomass and hemp oil processed by Rixxon Extraction. The trier of fact is charged with determining whether the respective parties' claims against each other have been proven by a preponderance of the evidence. The Defendants have intentionally caused the destruction of the material iPhone records and either the destruction of or the failure to retain the Signal chat room conversations in either their original format or screen shots thereof, despite being served with a November 23, 2019, and November 30, 2019, Preservation of Evidence Letters and despite Ava Cogburn's October 27, 2019, conversation with Alon Barak, wherein he stated that he and his lawyers are coming after them. Plaintiffs have a vested fifty percent (50%) interest in the harvested hemp, including the smokable flower, the hemp biomass and the CBD oil processed by Rixxon Extraction from the Joint Venture's hemp biomass.

At all times, including October 26, 2019, through October 28, 2019, the Farm could not be entered or existed except through a locked gate which required a combination. Exhibit "13" (May

16

4, 2022, Depo. of Rodney Cogburn, PP. 15:7-17:12, 20:1-18). Thus, the Defendants intentionally kept the Plaintiffs or those known by the Plaintiffs who would tell the Plaintiffs the truth, from having eyes on the Farm and the Joint Venture's hemp.

In late October, November 2019 and January 2020, Ava and Rod were trying to find buyers for the remainder (2,521 pounds of smokable flower and hemp biomass) and asked Jim Roberts (A.C.E.S. Security) to assist in finding buyers or an extractor. Exhibit "14" (Depo. of Jim Roberts, P. 123:4-24). At that time, despite and contrary to Ava's May 5, 2022, deposition testimony that all of the Joint Venture's hemp harvest was illegal, Ava Cogburn was advertising on the internet to sell Smokable Hemp, Abacus, T1, Cherries and Kief (all genetics grown during the Joint Venture Harvest).

*See also* screen shots of Ava Cogburn's November 30, 2019, December 3, 2019, and January 2, 2020, twitter advertisements. Composite Exhibit "3" (Twitter advertisement attached to First Supplemental Decl. of Alon Barak).

In Ava's May 5, 2022, deposition, she stated that at the end of the harvest she believed the harvest was cannabis because test results from samples alleged Joint Venture hemp "came back above .3 THC. They were allegedly .5 and .6." Exhibit "15", PP. 49:23-50:1. Subsequently in her deposition, Ava incredulously denied selling smokable hemp after October 2019. Exhibit "15", Pages 122:8-10. On Page 143:17-25, Exhibit "15", Ava emphatically, yet without any actual knowledge, states that Colorado rules require that if a test comes back above .3, everything else has to be destroyed.

Rooster's, Rod and Ava have absolutely no evidence whatsoever supporting their Counterclaim for civil theft against the Counter-Defendants. In each of the Defendants depositions they have testified under oath that they have no objective evidence that the Plaintiffs committed

civil theft. Contrary to the Defendant's unbelievable assertions, in support of the Plaintiff's claim for civil theft, the Defendants have taken the substantial quantity of the Joint Venture's smokable hemp, hemp oil and hemp biomass off of the Farm, slipped through the hands of their hired private security, through a family and their fenced in property without being seen by any of the on-site security cameras, and made it out of the double secured fencing and locked gates that only the Cogburn's controlled and being the only ones with the keys to the 40 foot shipping containers. <u>After</u> utilizing the encrypted and secure Signal App and all Defendants <u>establishing</u> their enterprising plan, <u>after</u> informing the Plaintiff that he has lost everything due to theft, days later the Defendants <u>3 days later fabricated a story, beginning with the Cogburns contacting</u> the Mesa County Sheriff's Office alleging that it must have been the Plaintiff, who was in California, and Noah Woollen, already in Denver, falsely representing that the Plaintiff and Mr. Woollen must have stolen approximately all of the smoldering, hemp biomass and packed smokable hemp.

The attached October 1, 2020, report by Investigator Dillon of the Mesa County Sheriff's Department (<u>Exhibit "4</u>) confirmed that such a large quantity of the Joint Venture's hemp products could only be transported using a forty (40) foot trailer such as that which would be hauled by a fifth wheel. Evidence confirms that two forty (40) foot trailers and a fifth wheel were located on the Farm from October 8, 2019, through October 28, 2019, and all were under the control of the Cogburns. <u>Exhibit "14",</u> (May 12, 2022, Depo. of Jim Roberts, P. 78:14-21. As stated by Farm worker Lorenzo Castillo in the portion of his deposition quoted above, Rodney Cogburn had stated his intention of cutting Barak out of the deal.

The Signal Application chat room conversations were participated in by Defendants Rod, Ava, Ben and Sheree. Incredulously, no telephone calls reporting the theft were made by the Defendants until mid-morning on Tuesday, October 29, 2019, when Rodney Cogburn reported a

theft to the Mesa County Sheriff's Department. Rooster's, Rod, Ava, Sheree and Ben have all been complicit in intentionally concealing the whereabouts of the missing smokable flower and hemp biomass in order to prevent Plaintiffs from receiving any benefit from the missing hemp products.

Interestingly, Defendants' counsel confirmed that in late 2019 or early 2020, all of the Defendants acquired new cell phones.

B. Each of Plaintiffs' five claims against Rodney Cogburn and Ava Cogburn (breach of contract against Rooster's; breach of contract-alter ego against Rodney and Ava Cogburn; Conversion against all Defendants; Civil Theft against all Defendants; and Unjust Enrichment against all Defendants) are, in part, based upon Rodney and Ava's intentional burning of the Joint Venture's 2,521 pounds of the Joint Venture's harvested hemp and 14.71 pounds of the Joint Venture's CBD oil in January 2021.

Rodney and Ava Cogburn have been complicit in secretly preventing the Plaintiffs from (1) being able to obtain a chemical analysis of the 2,521 pounds of the Joint Venture's Hemp, which the Cogburns admit was in their possession at the Farm when Investigator Williams met with them in early November 2019 until the Cogburns burned the 2,521 pounds in January 2021, and (2) being able to obtain a chemical analysis of the Joint Venture's CBD oil Ava Cogburn obtained from the MSCD on approximately October 21, 2020, as the Cogburns claim they burned the CBD oil at the same time that they burned the Joint Venture's harvested hemp in January 2021. The Cogburn's claim they were told to destroy the hemp and CBD oil; however, all they rely upon is their own inadmissible hearsay. There is NO written confirmation or testimony from the MCSD, the Colorado Marijuana Enforcement Division, the Colorado Department of Agriculture or any other federal or state official supporting those hearsay assertions.

## CONCLUSION

There are ample factual grounds to support entering the adverse inferences in the Relief Sought portion of this motion along with monetary sanctions and for the costs and fees of defending Count III of the Counterclaim alleging civil theft against the Counter-Defendants

Wherefore, Plaintiffs/Counter-Defendants, ALON BARAK, KR8TIV GROUP, LLC, a Delaware limited liability company, and KR8TIV, LLC, a Wyoming limited liability Company, respectfully pray that this Court will enter an Order issuing the above recited adverse inferences against Defendants, ROOSTER'S GUIDE & OUTFITTING ADVENTURS, LLC, AKA ROCKY MOUNTAIN NATUIRAL ORGANICS, RODNEY COGBURN, AVA COGBURN, SHEREE COGBURN WALCHER and BEN WALCHER, and awarding Counter-Defendants monetary damages for having to defend Count III of the Counterclaim,. for spoliation of the evidence.

## CERTIFICATE OF CONFERRAL

On Thursday afternoon, November 10, 2022, counsel for the parties began conferring about the subject of this motion, and continued their conferral on Tuesday, November 15, 2022. Defendants' counsel stated that he was opposed to the motion and would be requesting an evidentiary hearing.

Dated November 20, 2022.

Respectfully submitted,

S/Craig A. Brand

_____
**Craig A. Brand, Esq.**
Mystic Law, P.A.
4650 Indian Creek Road
Loveland, Colorado 80538
Telephone: (305) 878-1477
E-mail: Craig@ganjalaw.com
Attorney for Plaintiff/Counter-Defendant/
Third-Party Defendants

<u>**CERTIFICATE OF SERVICE**</u>

 I HEREBY CERTIFY that on November 20, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing via email to:

James F. Fosnaught, Esq.
jff@mountainlawfirm.com
Shoshana Rosenthal, Esq.
sr@mountainlawfirm.com
KARP NEU HANLON, P.C.
201 14th Street, Suite 200
Glenwood Springs, CO 81601
Phone: (970) 945-2261

       S/Craig A. Brand

       _____
       **Craig A. Brand, Esq.**
       Mystic Law, P.A.
       4650 Indian Creek Drive
       Loveland, Colorado 80538
       Telephone: (305) 878-1477
       E-mail: Craig@ganjalaw.com
       Attorney for Plaintiffs/Counter-Defendants