IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 19-cv-03556-RM-STV

ALON BARAK,
KR8TIV, LLC, a Wyoming limited liability company, and
KR8TIV GROUP, LLC, a Delaware limited liability company,

    Plaintiffs,

v.

ROOSTER'S GUIDE & OUTFITTING ADVENTURES, a Colorado company a/k/a Rocky Mountain Natural Organics,
RODNEY COGBURN,
AVA COGBURN,
SHEREE COGBURN WALCHER, and
BEN WALCHER,

    Defendants.

---

## ORDER
---

This diversity case is before the Court on cross-motions for summary judgment and partial summary judgment (ECF Nos. 189, 191) and Plaintiffs' request for spoliation sanctions (ECF No. 199). The Motions have been briefed and are ripe for review. (ECF Nos. 201, 203, 207, 209, 213, 214.) As explained below, Defendants' Motion is granted in part, and the Motions are otherwise denied.

**I.    BACKGROUND**

This dispute arises from a joint venture to cultivate hemp on about thirty acres of family-owned farmland in Mesa County, Colorado. The basic plan was for Defendants to provide the property and labor, while Plaintiffs provided financing. After expenses were reimbursed, the

anticipated profits were to be split.  Although hemp was planted and harvested from July through October 2019, each side now accuses the other of breaching their contractual obligations and stealing the harvested product, thereby denying the other their share of the anticipated profits from the joint venture.

Plaintiff Barak and the Cogburn Defendants agree that the joint venture began in July 2019 but disagree as to whether a written agreement was in place at that time.  Nonetheless, they do agree that "[t]he purpose of the joint venture was to plant, cultivate and harvest industrial hemp into hemp biomass and smokable flower with the intent that the smokable hemp once harvested be sold and with the intent that the hemp biomass be either sold or transported to an extraction company for processing into either hemp distillate and/or hemp isolate and then sold in that form."  (ECF Nos. 99, ¶ 26; 161, ¶ 26.)  They also agree that they initially intended to split the profits 51 percent for Rooster's and 49 percent for Plaintiffs.  (ECF Nos. 99, ¶ 23; 161, ¶¶ 12, 13.)  In the months that followed, Plaintiff Barak and the entity Plaintiffs he owned and controlled advanced funds for the joint venture, including by paying for hemp plants that were delivered to the property for planting.  (ECF No. 99, ¶ 31.)

On September 24, 2019, Plaintiff Barak and the Cogburn Defendants executed a single-page Joint Venture Contract purporting to set forth the parties' obligations and expectations.  (ECF No. 190-19 at 2.)  The Joint Venture Contract states that it "is between Alan Barak (CR8TIV GROUP) and Rooster's Guide & Outfitting Adventures, LLC. C/O Rocky Mountain Natural Organics (RMNO)."  (*Id.*)  Plaintiffs concede that it supersedes whatever understanding or agreement the parties had previously.  (ECF No. 99, ¶ 24.)

Multiple disagreements about how the joint venture panned out precipitated the claims and counterclaims in this lawsuit. Defendant Rodney Cogburn is the sole member of Defendant Rooster's Guide & Outfitting Adventures, LLC ("Rooster's").[1] The Walcher Defendants (Sheree and Ben) are the daughter and son-in-law of the Cogburn Defendants (Rodney and his wife, Ava).[2]

According to Plaintiffs, they contributed about $800,000 in farming expenses and wages to the joint venture, which yielded a harvest worth between $19.8 and $52.8 million. (*Id.* at ¶¶ 31, 36.) They allege that the Cogburn Defendants commingled joint venture funds and their personal funds (*id.* at ¶¶ 8-10) and that the Walcher Defendants used joint venture funds for the betterment of their lot without providing a benefit to Plaintiffs (*id.* at ¶ 32). They also allege that Defendants removed the harvested hemp from the property, depriving Plaintiffs of their reimbursement costs and their share of the profits from the joint venture. Plaintiffs assert claims for (1) breach of contract against Rooster's, (2) breach of contract against the Cogburn Defendants as alter egos of Rooster's, (3) conversion against all Defendants, (4) civil theft against all Defendants, and (5) unjust enrichment against the individual Defendants.

According to Defendants, Plaintiffs provided much less than the agreed amount of funding for the joint venture, causing Defendants to have to spend their own money to cover expenses. (ECF No. 161, ¶¶ 18, 20-22.) In addition, Defendants contend that the plants Plaintiffs provided resulted in a harvest that tested above the allowable THC limit for hemp, rendering it cannabis that had to be destroyed. (*Id.* at ¶¶ 23, 26.) Defendants further contend

---

[1] Plaintiffs have adduced no material evidence to the contrary.
[2] For the sake of convenience, this Order occasionally refers to the individual Defendants by first name.

that Plaintiffs' agents, who were sent to the property to help manage the joint venture, stole more than 20,000 pounds of the harvested product. (*Id.* at ¶¶ 16, 27.) Defendants filed two police reports alleging that over 20,000 pounds of hemp was stolen from them. (*Id.* at ¶ 29.) Defendants allege they were left with only about 2,500 pounds of hemp, along with 14 pounds of CBD oil, which they ultimately had to destroy. (*Id.* at ¶ 30.) Rooster's asserts a counterclaim for breach of contract against Plaintiffs. Rooster's and the Cogburn Defendants assert a counterclaim for fraud in the inducement and misrepresentation against Plaintiffs. And Rooster's asserts a counterclaim for civil theft against Plaintiffs, contending that the value of the harvested product was between $6 and $24 million and that Defendants are entitled to damages of at least $3 to $12 million.

Defendants have moved for summary judgment on all Plaintiffs' claims, while Plaintiffs have moved for summary judgment on Rooster's civil theft counterclaim. Plaintiffs contend they are entitled to an adverse inference instruction on the grounds that Defendants destroyed relevant evidence—including the harvested product and CBD oil they destroyed and encrypted text messages they sent to one another using the Signal app.

## II.   SUMMARY JUDGMENT

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in its favor. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). However, "[t]he mere

4

existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"The substantive law of the case determines which facts are material." *United States v. Simmons*, 129 F.3d 1386, 1388 (10th Cir. 1997). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Id.* at 251-52; *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).

### A. Defendants' Motion

#### 1. Breach of Contract Claims

Defendants first argue that Plaintiffs' breach of contract claims fail because the plain language of the Joint Venture Contract is too vague and uncertain to establish a meeting of the minds, and therefore it is not an enforceable contract. The Court agrees.

As the parties wanting to enforce a contract, Plaintiffs bear the burden to establish its existence. *See W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). But "[a]n agreement cannot be enforced unless the terms are sufficiently definite to allow a court to determine whether the parties have complied with them." *DiFrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243, 1248 (Colo. App. 2001). Thus, Plaintiffs needed to show that the parties not only agreed to all material terms but also that those terms are sufficiently definite.

5

*See Tuscany Custom Homes, LLC v. Westover*, 490 P.3d 1039, 1049 (Colo. App. 2020); *see also DiFrancesco*, 39 P.3d at 1248 ("While parties may definitely agree on some issues, the absence of agreement on other material issues prevents the formation of a binding contract.").

Here, it is undisputed that Plaintiffs and Rooster's began a joint venture to cultivate industrial hemp for sale. However, Defendants assert that the Joint Venture Contract contains only two clear and enforceable provisions: "that profit would be divided 50/50 after expenses, and that the parties were each required to provide an Excel spreadsheet within 2 weeks to calculate expenses." (ECF No. 189 at 7-8.) The agreement lists several anticipated expenses, but they are not described in any detail, no costs or estimates are included, and the agreement does not state who is responsible for procuring or paying for the items listed. (*See generally* ECF No. 190-19 at 2.) Moreover, the agreement fails to describe how, where, when, or by whom the harvested product will be distributed or sold and the anticipated profits obtained.

Plaintiffs do not meaningfully address the parties' failure to reach agreement on these material issues. Instead, they argue that they have substantially performed by investing $562,469 in the joint venture. (ECF No. 203 at 14.) Nevertheless, the parties clearly have numerous disputes about how that money was invested and what additional money needed to be invested. These disputes highlight their lack of agreement on the material terms of the agreement and show that such terms are not sufficiently definite. For example, Plaintiffs allege that Rooster's breached its contractual obligations by, inter alia, "failing to adequately supervise and protect the harvested hemp"; failing to grow and harvest the hemp "within the acceptable and lawful THC parameters of [its] license"; and refusing to provide them "with reasonable ingress and egress" to the property. (ECF No. 99, ¶ 40.) Meanwhile, Defendants allege that Plaintiffs breached their

contractual obligations by, inter alia, "[f]ailing to pay for expenses needed to fund the project"; "[f]ailing to provide merchantable clones to grow hemp that would meet the requirement of the permits"; and "[f]ailing to have the product pre-sold as promised." (ECF No. 161, ¶ 34.)  But the Joint Venture Contract contains no language imposing such obligations on either party.  Even if the parties had agreed to flush out the details at some point after they signed the contract, such an agreement is insufficient to render the contract enforceable.  *See DiFrancesco*, 39 P.3d at 1249-50.  Accordingly, the Court finds Plaintiffs have not shown there is a genuine issue as to whether the parties reached agreement on the material terms they now seek to enforce.

Further, the Court finds Plaintiffs' reliance on a previous version of the Joint Venture Contract that the Cogburn Defendants allegedly signed on July 15, 2019, is misplaced.  First, the Joint Venture Contract contains no mention of any prior agreements or understandings between the parties.  Second, the document is similarly deficient to the Joint Venture Contract in that it does not clearly set forth the obligations of each party, much less describe Defendants' obligations in terms that correspond with Plaintiffs' allegations as to how Defendants breached the agreement.  Third, the Cogburn Defendants deny that they ever signed the July 15 document, and their signatures appear on a separate page from the rest of the version of the document Plaintiffs have submitted—thus, there are tangible issues regarding the authenticity of this document.  Accordingly, the Court finds Plaintiffs have not established the existence of a genuine issue of material fact as to the existence of some agreement other than the Joint Venture Contract that is enforceable against Rooster's.

7

Plaintiffs' related claim that the Cogburn Defendants may be held personally liable for the alleged breach under an "alter ego" theory necessarily fails as well, and Defendants are entitled to summary judgment on both of Plaintiffs' breach of contract claims.

Further, although neither side has raised the issue, the Court notes that both the Joint Venture Contract and the July 15 document appear to contemplate growing not only "hemp," but "cannabis" and "marijuana." The Controlled Substances Act makes it unlawful to grow, possess, dispense, and distribute marijuana while criminalizing a range of marijuana-related activities. *See Sensoria, LLC v. Kaweske*, 581 F. Supp. 3d 1243, 1257 (D. Colo. 2022). Even if the Court presumes that whatever agreement the parties had was lawful under Colorado law, Plaintiffs have made no showing that the joint venture's planned activities comport with federal law. "As a general rule, a court will not compel the performance of a contract term that requires violating the law." *Id.* at 1258. Nor may a court "assist a party in enforcing a contract serving an illegal purpose." *Rademacher v. Becker*, 374 P.3d 499, 500 (Colo. App. 2015). Although it is undisputed that Rooster's and Sheree obtained hemp registration permits from the Colorado Department of Agriculture "and were authorized under state law to grow hemp on the Property" (ECF No. 210, ¶ 25), the briefs variously refer to "industrial hemp," "hemp biomass," "smokable flower," "smokable hemp," "hemp distillate or isolate," and similar terms that remain—perhaps conveniently for the parties and their counsel—undefined. For present purposes, the Court finds that Plaintiffs have not shown that the Joint Venture Contract, or any other agreement that may have existed between the parties, does not violate federal law. Under the circumstances presented, this provides an additional basis for declining to enforce any agreement the parties

8

had and granting summary judgment in Defendants' favor on Plaintiffs' breach of contract claims.

### 2. Civil Theft and Conversion Claims

Defendants argue that Plaintiffs' civil theft and conversion claims fail because there is no evidence that anything of value was stolen. *See* Colo. Rev. Stat. § 18-4-401(1). They contend, rather, that the joint venture ultimately produced a product that was worthless and had to be destroyed because it tested above the allowable THC limits for hemp. In their Response, albeit in a section addressing a different claim, Plaintiffs assert that Defendants' reliance on test results regarding the THC levels of samples they submitted is misplaced because of chain-of-custody issues and because the entire harvest was not tested. (*See* ECF No. 203 at 14-15.) They also point to evidence of text messages Ava sent to family members indicating that THC levels were within legal limits. (*Id.* at 9.) The Court notes in addition that Defendants assert a counterclaim for civil theft based on the allegation that the harvested hemp was worth $6 to $24 million. (ECF No. 161, ¶ 46; *see also* ECF No. 201 at 6-7 (arguing in response to Plaintiffs' Motion for Partial Summary Judgment that the harvest hemp had value to Rooster's).) On the current record, the Court finds there are genuine issues of material fact as the value of the harvested product. Therefore, Defendants are not entitled to summary judgment on this basis.

Defendants also assert there is no evidence of the requisite intent to establish a theft claim against them. In their Response, Plaintiffs cite *People v. Cardinal*, 593 P.2d 966, 966 (Colo. 1979), for the proposition that criminal intent can be inferred by the trier of fact from facts and circumstances of the case. Plaintiffs go on to cite evidence which, at least circumstantially, suggests Defendants may have stolen the hemp that was in their possession three days before

they reported to the police that it was stolen.  On the current record, the Court finds there are genuine issues of material fact as to the amount of hemp that was harvested and where it all went.  Based on these issues and the genuine dispute as to the value of the harvested product, the Court cannot conclude that Defendants are entitled to summary judgment on Plaintiffs' claims for conversion and civil theft.

### 3. Claims Against the Walcher Defendants

Defendants seek summary judgment on Plaintiffs' claims against the Walcher Defendants on the grounds that the allegations against these Defendants revolve around three undisputed facts: (1) the hemp product was grown on their property, (2) these Defendants did the timecards for laborers, and (3) they did not work full-time at the hemp grow.  (*See* ECF No. 189 at 18.)  In their Response, Plaintiffs fail to set forth any disputed facts or clarify the factual allegations that support their claims against these Defendants.  Although the document they submitted in response to Defendants' Statement of Undisputed Material Facts contains a section entitled, "Additional Facts and Supporting Evidence," it is devoid of any facts.  Plaintiffs merely provide a list of citations to the record, while failing to distill them into factual statements.  (*See* ECF No. 204, ¶¶ 73-111.)  Such a list not only contravenes the Court's Civil Practice Standards, *see* Civ. Practice Standard IV.C.2.d.2, but places the burden on the Court to comb through the record to find support for Plaintiffs' claims.  The Court declines to undertake such a task and does not consider Plaintiffs' submission in ruling on this Motion.  Because the Court finds the allegations are insufficient to state a claim against either of the Walcher Defendants, they are entitled to summary judgment on Plaintiffs' claims against them.

### B.  Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs request an order granting partial summary judgment on Rooster's counterclaim for civil theft.  But Plaintiffs cannot prevail on summary judgment merely by pointing a finger at Defendants and adducing circumstantial evidence that they may have had a hand in stealing some of the hemp Plaintiffs are accused of stealing.  Rather, Plaintiffs must show there is no evidence that Plaintiffs did not obtain possession of the harvested hemp with the intent to permanently deprive Rooster's of its use and value.  *See Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 608 (Colo. 2016).  Their Motion fails to demonstrate the absence of a genuine issue of material fact as to whether they stole any of the harvested product.

In their Response to the Motion, Defendants cite evidence that prior to the alleged theft, Plaintiffs were forming a plan to take the hemp from the property and sell it.  For example, Defendants cite Sheree's deposition testimony that Plaintiffs' agent, Noah Woollen, told her that because of its high THC levels, he could sell the harvested hemp as marijuana.  (ECF No. 202-7 at 6, ll. 23-24.)  Defendants also cite texts from Plaintiff Barack to Mr. Woollen, who was helping to manage the joint venture, stating that "we will need your truck to get goods out" and instructing him to "[g]et clients lined up ASAP."  (ECF No. 202-20 at 9-10.)  And, though the fact that Defendants reported some of the hemp stolen three days after Mr. Woollen left the property comprises some evidence in support of Plaintiffs' civil theft claim, it also comprises some evidence that could support Rooster's civil theft claim.  Thus, on the current record, genuine issues of material fact as to where the harvested hemp wound up preclude granting summary judgment on either parties' civil theft claim.

### III.  SPOLIATION

"A spoliation sanction is proper where (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007).  "[I]f the aggrieved party seeks an adverse inference to remedy the spoliation, it must also prove bad faith." *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009).

#### A.  Plaintiffs' Motion

Plaintiffs seek two adverse inference instructions and a monetary sanction based on (1) Defendants' alleged deletion of encrypted text messages they exchanged using the Signal app in the days leading up to when the harvested hemp was reported stolen, and (2) their admitted destruction, in January 2021, of about 2,500 pounds of harvested hemp and 14 pounds of CBD oil they had in their possession after the alleged theft.  The Court finds Plaintiffs have failed to show they are entitled to relief on either ground.

The first proposed instruction would instruct that from October 27 through October 28, 2019, the individual Defendants used a private chat room to send and receive text messages with their cell phones and intentionally failed to keep a record of their messages exchanged in the chat room.  (ECF No. 199 at 2.)  It would go on to instruct that these messages concerned Defendants' removal of a substantial amount of the joint venture's hemp from the property to intentionally deprive Plaintiffs of the ability to be reimbursed for their investment and to share in the profits, and it would further instruct the jury to ignore any defense that the harvested hemp's THC levels exceeded legal limits.

The second proposed instruction would instruct that when the Cogburn Defendants burned about 2,500 pounds of hemp and fourteen pounds of CBD oil belonging to the joint venture in January 2021, they had not sent any quantity of that hemp or CBD oil for analysis to determine whether the crop's THC levels exceeded legal limits. The instruction would reiterate that the jury was to ignore any such defense.

### 1. Text Messages

With respect to the alleged text messages, Plaintiffs have not shown that the individual Defendants intentionally deleted any such messages, much less shown that they did so after they knew or should have known that litigation was imminent. The duty to preserve evidence is often triggered by the filing of a lawsuit, but the obligation "may arise even earlier if a party has notice that future litigation is likely." *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 621 (D. Colo. 2007). However, the duty requires more than a mere possibility of litigation. *Id.*

Plaintiffs contend that the duty to preserve first arose from a phone call on October 27, 2019, when Ava told Plaintiff Barak that the hemp had been stolen, and he responded by "yell[ing] and scream[ing] at Ava, informing her that he would be coming to the farm, that he and his lawyer would be suing and that they better not be destroying or selling off the evidence." (ECF No. 199 at 9.) But the Court is not persuaded that this heated exchange constitutes "unequivocal notice of impending litigation" giving rise to a duty to preserve. *See Cache La Poudre Feeds*, 244 F.R.D. at 621.

Plaintiffs next contend that the duty arose from a mediation demand and evidence preservation letter their counsel sent to Defendants on November 23 and 30, 2019. But there is no evidence that any Defendant received either of these letters.

Ava contends that she did not to learn about the lawsuit until February 2020. (ECF No. 213-2, ¶ 12.) But even assuming Defendants had notice of the litigation in late December 2019, when the lawsuit was first filed, Plaintiffs have not shown that the text messages were intentionally deleted afterward. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997) ("Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case."). To begin with, there is no evidence that the Signal app preserved past messages or, if it did, for how long. Nor is there evidence the app gave its users the ability to retrieve past messages. But even assuming such messages could have been retrieved at some point, Plaintiffs have adduced no evidence that any Defendant acted with the intent to deprive them of the messages.

In any event, Plaintiffs have also not shown that they were prejudiced by the deletion of the messages. Although they speculate that the messages might have exonerated them or implicated Defendants in the theft of the harvested product, such speculation is not sufficient to establish prejudice. Moreover, Plaintiffs have also not shown that the alleged messages would have been admissible or that the absence of the messages somehow prevents them from either asserting their civil theft claim against Defendants or defending against the counterclaim against them.

Finally, Defendants' use of the Signal app does not establish that they acted in bad faith—particularly considering Ava's stated concern that the family's phones had been tapped

14

and her willingness to turn over her phone to the police as part the investigation into the hemp Defendants reported stolen. (ECF No. 213-2, ¶¶ 4-7.) Although the police were not able to recover Signal app messages from the phone, they did extract 2790 text messages from it which were provided to Plaintiffs in discovery. (*See* ECF No. 214 at 4.) In short, Plaintiffs' assertion of bad faith relies on a string of unsupported inferences and falls well short of establishing their entitlement to the broad inference instruction they request.

### 2. Destroyed Hemp

As for Defendants' admitted destruction of the remaining hemp in January 2021, there is evidence that they were merely complying with applicable regulations due to its high THC content. Plaintiffs have adduced no evidence to support their contention that the harvested hemp, or at least some portion of it, was not above the applicable THC limit. Nor have they shown that they made any efforts to have it tested from the time they filed this lawsuit until Defendants destroyed it more than a year later.

Plaintiffs' assertion of bad faith is significantly undermined by Defendants' assertion that they destroyed the remaining hemp because authorities instructed them to do so. Plaintiffs have made no showing that the real reason the hemp was destroyed was to deprive them of valuable evidence in their case.

Plaintiffs also fail to show that Defendants acted in bad faith or to establish the other elements needed for a spoliation sanction. In contrast to their sparse showing as to the appropriateness of any sanction, they seek overly broad adverse inference instructions that would practically ensure they prevailed on disputed issues that are central to this case. Accordingly, their Motion is denied.

### IV.  CONCLUSION

Defendants' Motion (ECF No. 189) is GRANTED IN PART and DENIED IN PART as stated in this Order.  Plaintiffs' Motions (ECF Nos. 191, 199) are DENIED in their entirety.  The case proceeds on Plaintiffs' conversion and civil theft claims against Rooster's and the Cogburn Defendants; Plaintiffs' unjust enrichment claim against the Cogburn Defendants; Rooster's breach of contract counterclaim against Plaintiffs and Rooster's; and the Cogburn Defendants' fraud in the inducement and misrepresentation counterclaim against Plaintiffs.

DATED this 1st day of May, 2023.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge